(1 App. Div. 623.)

NATIONAL BANK OF DEPOSIT OF CITY OF NEW YORK v. ROGERS
et al.

(Supreme Court, Appellate Division, First Department.    February 7, 1896.)

REPLEVIN—LEGAL TITLE—PLEDGE.

Plaintiff loaned money to the owners of goods in the customhouse, the bills of lading of which were in possession of the consignees. The owners, without delivering the goods or bills of lading, executed a note to plaintiff reciting that the goods had been deposited with plaintiff as collateral security for the note, and that plaintiff had a lien thereon, and also executed a receipt stating that they held the goods in trust for plaintiff, and that plaintiff might at any time cancel the trust and take the goods. The owners afterwards removed the goods from the customhouse, and assigned the same to defendants' testator, after which plaintiff canceled the so-called trust. *Held,* that plaintiff acquired no legal title, and therefore could not maintain replevin for the goods.

Appeal from circuit court, New York county.

Action by the National Bank of Deposit of City of New York against Henry P. Rogers and others, executors, to recover possession of certain goods. From a judgment of the supreme court in favor of plaintiff, entered upon a verdict of a jury, and from an order denying a motion for a new trial upon the minutes of the court, defendants appeal. Reversed.

The action was brought to recover chattels, commonly known as an "action of replevin." The goods were purchased by Sardy, Coles & Co., in Europe, but were consigned to Perry, Rider & Co., customhouse brokers in New York. After the arrival of the goods in New York, and while they were still in the customhouse, and the duties thereon remained unpaid, and on the 31st day of August, 1891, Sardy, Coles & Co. borrowed from plaintiff $3,000, to be used, among other things, in paying the duties on the goods, and gave their note therefor, payable on demand, which stated that they had deposited the goods with the plaintiff as collateral security for the payment of the note and all other demands unpaid, and that they gave the plaintiff a lien upon the goods for the payment of such note and demands, and authorized the plaintiff, on the nonpayment of such note and demands, to sell the whole or any part of the goods, and, after deducting the expenses, to apply the proceeds in payment of such note and demands; and Sardy, Coles & Co. at the same time gave the plaintiff a receipt for the goods, agreeing to hold them in trust for the plaintiff and as its property, and to sell the same for its account, and hand the proceeds to the plaintiff, to apply on the note and demands, and further providing that the plaintiff might at any time cancel this trust, and take possession of the goods or the proceeds thereof. Thereafter, and on the 4th day of September, 1891, Sardy, Coles & Co. delivered to Perry, Rider & Co. a check for $1,345.35, with which to pay the duties on the goods, and the duties were thereupon paid, and the goods were taken from the customhouse and delivered to Sardy, Coles & Co. After the goods had come into the possession of Sardy, Coles & Co., and on the 30th day of September, 1891, they executed and delivered to defendant's testator their indenture bearing date September 23, 1891, whereby, in effect, they stated that they were indebted to such testator in the sum of $25,063.21,—giving the terms thereof,—and that in consideration of such indebtedness they sold, assigned, and transferred to him all their property, real and personal, of every kind, to be by him converted into money, and the proceeds thereof applied to the payment of their indebtedness to him, and to the payment of debts owing by them to other parties, and to pay over the balance, if any, to Sardy, Coles & Co. Under this indenture the testator, on the same 30th day of September, 1891, took possession of the property therein described, including the goods here in question. On the same day, Sardy, Coles & Co. wrote to plaintiff that they had made an assignment of their business to the testator; and thereupon the plaintiff de-

manded possession of the goods in question, at the place of business of Sardy, Coles & Co., from the persons there in charge of the assigned property, and also demanded the goods of the authorized attorneys and agents of the testator, at their office. October 3, 1891, the plaintiff caused copies of note, receipt, etc., to be sent to the attorneys for the testator, in a letter, wherein was stated the nature of the plaintiff's claim to the goods, and wherein the testator was asked to recognize the plaintiff's claim and to pay its indebtedness. October 24, 1891, a paper was served by plaintiff, canceling the trust, and demanding possession of the goods. The goods were not surrendered to plaintiff, but were inventoried as a part of the assigned property by the testator, and thereafter, and on October 26, 1891, this action was commenced. The testator died April 22, 1892, and his executors were thereafter substituted as defendants in the action. At the time the money was loaned by the plaintiff to Sardy, Coles & Co., and the note and receipt were taken, the goods were not in the possession of Sardy, Coles & Co., but in the customhouse, subject to a lien for duties. Sardy, Coles & Co. did not have the bills of lading, even. Perry, Rider & Co. were consignees, and held the bills of lading. They did not then, or for some days thereafter, transfer the bills of lading to any one. The plaintiff never had actual possession of the goods, nor did it ever have any transfer of the bills of lading. The plaintiff never canceled the trust agreement, or demanded the possession of the goods, until after the assignment was executed and delivered to defendant's testator, and he had actually taken the goods into his possession thereunder. On the trial the defendants moved for a dismissal of the complaint on the ground, among others, that the plaintiff had failed to show any title to, or possession or right to possession of, the goods. The court denied this motion, and held, as a matter of law, that plaintiff's title and right to possession of the goods covered by the trust agreement, so called, was conclusively established, and that the only question for the jury was whether the goods taken by the sheriff in this action were the same as those covered by the trust agreement. To all of which the defendants excepted. The jury rendered a verdict for the plaintiff, and from the judgment entered on such verdict this appeal is taken.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and INGRAHAM, JJ.

Kenneson, Crain & Alling, for appellants.
Reeves & Todd, for respondent.

WILLIAMS, J. The evidence was sufficient to sustain the verdict of the jury as to the identity of the goods, to recover which the action was brought. The real question is whether the trial court was justified, upon the evidence, in holding that plaintiff's title or right to possession of the goods covered by the trust agreement, so-called, was conclusively established, so as to enable it to maintain this action. There was substantially no dispute as to the facts, and the question was therefore correctly regarded as one of law, for the trial court. The goods were never actually delivered to the plaintiff, nor was there any symbolical delivery, by way of transfer and delivery to the plaintiff of the bills of lading. The goods were, at the time the loan was made and the note and the receipt were taken, in the possession of the customhouse authorities, and were not given up by them until the duties were paid, some days later. The bills of lading were held by Perry, Rider & Co., who were the consignees therein named, and no transfer was made of the bills to any one until after the duties were so paid. The statements in the note and the receipt as to the delivery and redelivery of the goods were untrue, in fact. Under these circumstances, there was, and

could be, no legal pledge of the goods by Sardy, Coles & Co. to the plaintiff, inasmuch as the delivery of possession is absolutely essential in order to constitute a pledge. Upon the conceded facts, the most that could be claimed by the plaintiff was that, by virtue of the note and receipt, it acquired an equitable lien upon the goods. Such a lien, however, even if it existed, did not authorize the plaintiff to reduce the goods to possession, against the consent of the defendant's testator, without the interposition of a court of equity. Such a lien, therefore, was not a sufficient interest in the property to enable the plaintiff to maintain this action. An action in equity, to enforce such a lien and recover the possession of the goods, might very likely have been maintained; but, in order to maintain this action, the plaintiff must have had the legal title, or a legal right to the possession of the goods. Deeley v. Dwight, 132 N. Y. 59, 30 N. E. 258, and cases therein referred to. The mere equitable right to the possession of the property will not do. It was distinctly held in Wheeler v. Allen, 51 N. Y. 37, that the plaintiff could not maintain replevin where the legal title was in the defendant as trustee for him. Earl, C., said:

"In law, he [the defendant] held the scrip as trustee for the plaintiff; and, as such trustee, he could be compelled to account to the plaintiff in an action in equity. But an action of replevin to recover the scrip, under such circumstances, is a great novelty. The legal title was never vested in the plaintiff, and his only remedy to procure this scrip was by an action in equity."

This case was held in Railroad Co. v. Bayne, 75 N. Y. 4, to be authority for the equitable action. Folger, J., said:

"The opinion of Earl, C., in that case, states that the remedy of the plaintiff there to procure the scrip was a suit in equity."

The same rule was laid down in Haas v. Altieri (Com. Pl. N. Y.) 21 N. Y. Supp. 950. The court said that the plaintiff must have the right of immediate possession, and that the title must be a legal title, and not a right enforceable only in equity.

The result of these views is that the court erred in holding that the plaintiff had such interest in the goods as entitled it to maintain this action.

The judgment should be reversed, and a new trial ordered, with costs to the appellants, to abide event. All concur.