familiar law that a fraudulent representation may be effected by conduct, by acts as well as by words, by silence when there is a duty to speak, by half-truths calculated to mislead, or by reckless statements made without knowledge. (Citing cases.) It is equally well settled that the representation need not be made directly to the party injured by it (Brackett v. Griswold, 112 N. Y. 454, 20 N. E. 376), and that one who is induced to enter into a contract by the false representations of a third party may have a right of action against the latter for the wrong (Kujek v. Goldman, 150 N. Y. 176, 44 N. E. 773, 34 L. R. A. 156, 55 Am. St. Rep. 670). * * * Tested by the application of those principles, the complaint in the case at bar alleges all the essentials of an action for fraud and deceit, i. e., a representation by acts for the public, and therefore for the plaintiffs, to act upon, falsity, scienter, deception, and injury. A declaration of a dividend by a going concern implies earnings from which to pay it, and the publication of the fact of such declaration is certainly calculated to induce the public to believe that the dividend has been earned and that the corporation is prosperous. If, intending the public to act thereon, the defendants had made and published a report expressly stating that the dividend declared had been earned, there would be no doubt of their liability to a person thereby deceived to his injury. The familiar cases of false prospectuses need not be cited."

If the declaration and payment of a false dividend upon the faith of which the purchaser bought stock in the open market was sufficient to support an action for deceit against the directors who knowingly declared the false dividend, it clearly follows that the allegations in the complaint at bar are sufficient to support the action upon the purchase in the open market alleged to have been on reliance upon the false and fraudulent representations of the prospectus delivered to the plaintiff and issued to him and to the general public for the purpose of inducing the investing public in general and all persons into whose hands such prospectus should come, including the plaintiff, in reliance upon the statements contained therein, to invest in the shares of stock of the said company and to persuade said public and this plaintiff that the shares of said company would prove a safe and highly remunerative investment. Therefore, as the plea of the statute does not reach the entire cause or causes of action set up in the complaint, the order appealed from denying defendant's motion for judgment on the pleadings was right and should be affirmed, with $10 costs and disbursements to the respondent. All concur.

---

(160 App. Div. 525)

### GANDY v. COLLINS, Sheriff.

(Supreme Court, Appellate Division, Second Department.　January 16, 1914.)

1. REPLEVIN (§ 8*)—TITLE OF PLAINTIFF.

　　One has only an equitable right or lien against cars, which can be reduced to possession only by suit in equity, and so cannot maintain replevin for them; the owners having merely assigned to him as collateral security their right, title, and interest therein, and not turned over the possession.

　　[Ed. Note.—For other cases, see Replevin, Cent. Dig. §§ 45–68; Dec. Dig. § 8.*]

2. REPLEVIN (§ 25*)—LAW GOVERNING.

　　Proceedings in rem to gain possession of or sell cars, which remained in New York, in the possession of the owners, notwithstanding they as-

signed their right, title, and interest therein as security for their note, a contract of another state, must be governed by the lex rei sitæ.

[Ed. Note.—For other cases, see Replevin, Cent. Dig. §§ 125–127; Dec. Dig. § 25.*]

3. TROVER AND CONVERSION (§ 64*)—CONSIDERING EQUITIES.

Any equities of the parties cannot be inquired into in an action at law for conversion.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. § 284; Dec. Dig. § 64.*]

Appeal from Trial Term, Richmond County.

Action by George S. Gandy against John J. Collins, Sheriff of Richmond County. Judgment for plaintiff, and defendant appeals. Affirmed.

The following is the opinion of Kelly, J., at Trial Term:

[1] In this action I find for the plaintiff. It appears that at the time the 15 cars, title to which is in dispute, were taken in replevin by the defendant in the action of the Franklin Trust Company of Philadelphia against Brubaker, the trust company had no legal title to the cars, and had never been in possession of them. The cars were in the possession of G. S. W. Brubaker & Co., a New York corporation, which had the legal title and possession from the date of purchase from the city of New York. The relation between the trust company and Brubaker & Co. was that of lender and borrower. The trust company made a loan or loans to the latter company to enable it to purchase and carry the cars. The loan was secured by the promissory notes of Brubaker Company, renewed from time to time, with credits and additions, on the books of the trust company in Philadelphia, where the Brubaker Company kept its account. There is no question that Brubaker Company bought the cars from the city of New York at public sale in that city. As collateral security for the loan the Brubaker Company delivered to the trust company assignment of its right, title, and interest in the cars, but possession of the cars was never turned over to the trust company, nor did the cars ever leave the state of New York. They were stored on tracks in the yard of Milliken Bros., at Millikens, Mariners Harbor, Richmond county, N. Y. They were stored in the name of the Brubaker Company. They continued in that name to the date of the replevin. The trust company never possessed itself of the cars, or asserted a right to possession. If it be said that Brubaker promised to store them in the name of the trust company, it is clearly shown that they were not so stored, and the Franklin Trust Company knew it. The storage charges were paid by the Brubaker Company, repairs, etc., were made on the cars by the Brubaker Company, and the Brubaker Company maintained a watchman all in their own name. The trust company knew, or should have known, these facts, because statements of the items of these expenses were furnished to them by Brubaker.

At most, the trust company had an equitable right or lien against the cars, which was not reduced to possession, and could only be reduced to possession by suit in equity. National Bank of Deposit v. Rogers, 1 App. Div. 623, 37 N. Y. Supp. 365; Wheeler v. Allen, 51 N. Y. 42. The trust company had no right to sell the cars in the manner attempted in Philadelphia, because it had no common-law lien which involved possession of the cars, and it obtained no legal title by such attempted sale. Duncombe v. R. R. Co., 84 N. Y. 190.

[2] While the transaction between the parties was carried on principally in Philadelphia, where the notes are dated and were made payable, and while I think the law of Pennsylvania may be binding on the parties so far as the nature of the agreement and its validity are concerned, I reach the conclusion that in dealing with the cars, to obtain possession or to sell them, the laws of the state of New York governed the situation. The attempted sale of the cars in Philadelphia was not in accordance with the laws

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the state of New York, as to sufficiency of the notice or the length or character of the advertisements. Lien Law, secs. 200, 201, 202. And indeed I cannot find that it was a lawful sale under the laws of Pennsylvania, if reasonable notice, or in fact any notice, was required. The sale in this case was advertised on the evening of the day preceding the transaction in one newspaper in Philadelphia. No details were given, the location of the cars was misstated, and no attempt was made by the vendor to protect the rights of the Brubaker Company, or to invite competition in bidding. The result shows that it was a pretended sale. Apparently no one knew of it. Brubaker attended and protested, but the sole object of the so-called sale appears to have been to go through the form of turning over title to the trust company. It was not a fair or reasonable sale under any law.

But this property never went out of the state of New York. The Brubaker Company, a New York corporation, purchased the cars in New York, and with the knowledge of participation of the trust company a payment for the cars was made in New York state. The cars remained in the state of New York; one reason, if not the principal one, being that to remove them to another state would require expensive alterations to comply with the requirements of the Interstate Commerce Commission, all of which was pointed out to the president of the trust company by Mr. Brubaker by his letters in evidence.

It is the trend of modern opinion that in such a case, so far as the enforcement of any proceeding in rem is concerned, it must be governed by the lex rei sitæ. And this from the necessities of the case, to maintain values and to avoid conflict of jurisdiction. The state of New York has enacted positive definite laws governing the sale of personal property within its territory, and these laws govern sales of property which has what has been described as an "implied locality." Public policy demands that foreign principles shall not be infused into the management of property definitely located here, and unless the lex rei sitæ be applied, there is no available decisive law. There is, of course, personal property which by its nature is governed by the law of its owner's domicil, property which he may carry about with him, or which has no definite situs. Or it may be property involved in domestic relations, or other special situations. But these cars had a definite fixed location in this state, they had never been removed from it, and, if removed or possession changed, I think the laws of this state were applicable and binding. Wharton, Conflict of Laws, vol. 1, § 308; Story, Conflict of Laws, § 383 et seq., and cases cited. If the trust company desired to enforce its equitable rights or to sell this property, I think it was bound to comply with the laws of New York. Whatever law governed its contract with Brubaker & Co., so far as possession of these cars was concerned, the trust company, as well as Brubaker, placed them and consented that they should remain in the state of New York, and I think they submitted themselves to its jurisdiction in this regard. Therefore I hold that the attempted sale in Philadelphia was null and void and ineffectual to transfer title.

[3] It follows that the taking and withholding of possession by the defendant sheriff was unlawful, and constitutes a conversion for which he, or those for whom he was acting, must respond in damages. It is no answer to argue that Brubaker owes the trust company money, or that he is insolvent, or that the business methods do not accord with the ideas of propriety which govern the bank. While I hold that no partnership existed between the trust company and the Brubaker corporation, the bank sought to obtain a share of the profits expected when Brubaker should sell the cars, one-third to the bank, two-thirds to Brubaker, and Brubaker, for some consideration not very clearly expressed, had agreed to share his two-thirds with some company in which the president of the trust company was interested. But when sales were slow and the profits did not immediately materialize, the sharing agreements were all canceled. The debt to the trust company remained unpaid, and in its desire to recoup itself, it make the mistake of taking the law into its own hands, reaching out to take forcible possession of property, which up to that time, for reasons satisfactory to its officials, it had allowed to remain in Brubaker's possession.

This is an action at law for conversion. The court in this case has no right to inquire into the equities between the trust company and Brubaker, or Brubaker's assignee, the plaintiff here, who took with full notice of the facts. The trust company has deliberately avoided a court of equity.

There is a radical difference of opinion as to the value of the cars. The plaintiff says they are worth over $2,000 each. The trust company insists that they are only available as scrap. They were purchased at a public sale in New York for $400 each. To make them salable required expenditures for painting, alterations, etc., and even then in three or four years only five cars were sold. While some of them brought figures which seem to support plaintiff's ideas of value to some extent, it would be an unfair standard to apply. I doubt whether there was any demand for them in one lot. The best that could be done was to peddle them out singly or in small lots. After considering all the evidence, I award the plaintiff $900 a car for the lot, or $13,500 in all besides the costs of this action.

I may add that after examining the authorities, I adhere to the ruling on the trial, admitting the evidence of the dealings between Brubaker and the trust company, and the statements made by him. I think all these transactions and declarations were part of the res gestæ, and that they were binding on the plaintiff. The plaintiff may have appropriate exception to this ruling wherever necessary.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

Alfred V. Norton, of New York City, for appellant.
Reeves & Todd, of New York City, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Mr. Justice Kelly at Trial Term.

---

### ALEX. CAMPBELL MILK CO. v. UNITED STATES FIDELITY & GUARANTY·CO.

(Supreme Court, Appellate Division, Second Department. February 20, 1914.)

INSURANCE (§ 508½ New, vol. 4 Key-No. Series)—INDEMNITY—CONSTRUCTION.
 In 1904 defendant executed a bond running for a term of one year, obligating itself to reimburse plaintiff for all losses sustained through the defalcations of an employé to the amount of $2,500. Thereafter, on the payment of the required premium, three continuation certificates were issued, extending the policy down to the year 1908. The continuations provided that they should be subject to the provisions of the original bond, which declared that defendant should not be liable upon any previous bond; it being mutually understood that but one bond should be in effect at one time. The bond also provided that defendant should in no way be responsible to the employer to a greater extent than $2,500. *Held*, that the bond and the renewal certificates constituted distinct liabilities rendering the guarantor liable for defaults made during the respective periods covered by the bond of the renewals, up to the amount of $2,500 per annum.

Appeal from Trial Term, Kings County.

Action by the Alex. Campbell Milk Company against the United States Fidelity & Guaranty Company. From a judgment for plaintiff, and an order denying its motion for new trial, defendant appeals. Affirmed.