WALTER A. FULLERTON, as Administrator, etc., of F. AUGUSTUS
    HEINZE, Deceased, Respondent, Appellant, *v.* THE
    NORTHERN BANK OF NEW YORK, Appellant, Respondent.

First Department, July 11, 1918.

Conversion — action for alleged conversion of cash and securities
    loaned as collateral — effect of introduction by plaintiff as a part
    of his affirmative case of a separate defense contained in defendant's
    answer — sale of securities pledged as collateral — necessity for
    notice under Lien Law.

In an action for the conversion of cash and securities, the plaintiff alleged
    that he loaned them to the defendant bank in reliance upon statements
    by it which proved to be false and fraudulent and were made for the
    express purpose of inducing him to part with said cash and securities,
    and that immediately on receiving them the defendant sold and disposed
    of the same at prices below the real or market value, and unlawfully con-
    verted the proceeds to its own use without notice to the plaintiff in violation
    of its agreement to keep the securities intact and not to sell or dispose of
    them and to return them or repay the value " within a reasonable time."
    The only evidence with respect to the alleged conversion of the securities
    by the defendant, which was denied by it, was a separate defense contained
    in the defendant's answer which was offered in evidence *in toto* by the
    plaintiff as a part of his affirmative case. Said defense set forth that
    defendant had loaned several thousand dollars to a brokerage firm, two
    members of which were brothers of the plaintiff and held stock and
    securities as collateral thereto, and in order to prevent the immediate
    sale of said collateral the plaintiff delivered to the defendant as further
    collateral for said loans the cash and securities specified in the complaint;
    that notwithstanding the receipt of such additional security, the Banking
    Department objected to said loans of the brokerage firm and demanded
    that they be paid at once, and that thereupon the defendant bank, with
    express authority and approval of the plaintiff and upon notice to him,
    sold and disposed of said collateral and applied the proceeds to the pay-
    ment of the loans of the brokerage firm.

*Held*, that the referee to whom the case was referred erred in holding that
    the sale and application of the proceeds thereof on the indebtedness
    of the brokerage firm was not with the consent and approval of the plain-
    tiff, and upon notice to him, and that, therefore, the judgment in favor
    of the plaintiff should be reversed and a new trial granted.

Although it may be that a witness could not have been permitted to testify
    in the language of the defense, if objection had been taken thereto, the
    plaintiff is in no position so to contend now, after introducing the defense
    as part of his affirmative case, precisely as if he had called a witness to
    testify thereto.

Although the attorney for the plaintiff in offering said defense as evidence in favor of his client did so expecting that it would not be regarded as proof of facts fatal to recovery, it nevertheless must be given that effect.

Although the relation of pledgor and pledgee exists, a sale of securities pledged as collateral may be made by special agreement without giving the notice required by the Lien Law.

CROSS-APPEALS by the plaintiff, Walter A. Fullerton, as administrator, and by the defendant, The Northern Bank of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 29th day of January, 1916, upon the report of a referee appointed to hear and determine the issues.

*Charles A. Winter* of counsel [*Rockwood & Lark,* attorneys], for the plaintiff.

*William C. Breed* of counsel [*Sumner Ford* with him on the brief; *Breed, Abbott & Morgan,* attorneys], for the defendant.

LAUGHLIN, J.:

The action was commenced May 23, 1910, by F. Augustus Heinze. Issue was joined by the service of an amended answer to an amended complaint on June 28, 1914. At that time the defendant was in liquidation, having been taken over by the State Superintendent of Banks, and the answer was verified by a Special Deputy Superintendent of Banks. After issue had been so joined and on the 4th of November, 1914, Mr. Heinze died. His administrator was duly substituted, but the issues came on for trial as thus joined before his death, and for brevity he is referred to as the plaintiff. The complaint shows that on the 12th day of June, 1908, the Northern Bank of New York and the Hamilton Bank of New York city, both domestic moneyed corporations, were merged into the Riverside Bank of New York city, an existing domestic moneyed corporation, and it thereupon took as its name the Northern Bank of New York, the defendant herein.

The transactions on which the action is based were had with said Riverside Bank. The plaintiff alleged that on the 16th of October, 1907, said bank was in financial difficulties and requested him to loan to it certain specified securities and $50,000 in cash, all of which he owned, to enable

it to withstand the pressure of its existing financial obligations; that through its officers and agents it represented to him that it would thereby be enabled to continue in business, but that otherwise it would soon be compelled to close its doors and cease business, and further represented that it would keep the securities intact and would not sell or dispose of them and would return them to him and repay the $50,000 " within a reasonable time; " that there was then and in or about said month of October a financial panic in the city of New York, and the stability of many financial institutions was threatened, and plaintiff was willing so to assist said bank, relying on its statements and representations; that plaintiff was not a stockholder of said bank, nor was he indebted unto it in any amount either directly or contingently; that he placed full and complete reliance upon the statements so made to him by said bank and fully believed the same and had no personal knowledge of any kind relative to the affairs of said bank, excepting as so communicated to him; that the said statements so made to him by said bank were false and fraudulent, with the exception of the statement that it was in serious financial difficulties, and were known to said bank to be false, fraudulent and untrue when made, and were made by it for the express purpose of inducing him to part with said cash and securities, and with the intention on the part of the bank of depriving him thereof; that on said 16th day of October, 1907, the plaintiff, in full reliance upon the truth of said statements and representations, delivered to said bank, in accordance with said arrangement, $50,000 in cash, 250 shares of the capital stock of the State Savings Bank of Butte, Mont., 468 shares of the capital stock of the Italian American Trust Company and $90,000 of the bonds of Ohio Copper Company; that said bank, in violation of its express agreement to and with the plaintiff and in fraud of his rights and ownership of said securities and in order to carry out and consummate its unlawful and wicked scheme to cheat, deceive and defraud him and to deprive him of his property, immediately on receiving from the plaintiff the said cash and securities sold and disposed of the same at prices far below the real or market value thereof, and unlawfully and fraudulently converted the

cash and the proceeds of the sale of the securities to its own use without notice to the plaintiff; that immediately upon learning of the unlawful sale of said securities, plaintiff demanded the return of the cash and securities, but said bank wholly failed and refused to return the same and immediately upon receiving them from the plaintiff unlawfully converted them to its own use; that the value of the property so converted was $350,000, in which amount, together with interest thereon from said 16th day of October, 1907, the plaintiff has been damaged and for which he demanded judgment. The defendant by its answer denied any knowledge or information sufficient to form a belief with respect to the allegations of the complaint, excepting those relating to the formation of the defendant by said merger. No evidence was offered by the plaintiff in support of the allegations of the complaint with respect to false and fraudulent representations having been made to it by or on behalf of the bank, and the only evidence with respect to the alleged conversion of the securities by the defendant was a separate defense contained in the defendant's answer, which was offered in evidence *in toto* by the plaintiff and was received in evidence and marked plaintiff's Exhibit 2. The attorney for the plaintiff on offering this part of the answer in evidence was informed by the referee that the pleadings were always before the court and he replied that he offered it " as proof as to what the transaction was" and stated that he considered that he had " a right to offer it just as if " he " called the person who verified it;" and in answer to an inquiry by the attorney for the defendant he stated that he offered it as part of the plaintiff's affirmative case. Before offering the separate defense in evidence, the attorney for the plaintiff had requested the referee to strike out the last sentence of paragraph 11 thereof as constituting conclusions of law and not stating facts; but the referee ruled that the allegations constituted a sufficient allegation that the sale of the securities was made by the defendant with the plaintiff's consent and approval, and the referee denied the motion. The defense as thus introduced in evidence by the plaintiff sets forth that on said 16th day of October, 1907, the defendant had loaned to in the copartnership firm of Otto Heinze & Co., doing a

brokerage business in the city of New York, about the sum of $585,000, which was then unpaid; that said loans were made on promissory notes of certain individuals who were members or employees of the firm; that payment of each note was guaranteed by the firm or a member thereof and was secured by certain collateral of the firm, consisting of shares of the common capital stock of the United Copper Company, of shares of the capital stock of Davis-Daly Copper Company, of shares of the capital stock of Ætna Indemnity Company, of first mortgage bonds of La France Copper Company, of bonds of the Pennsylvania Knitting Mills Company, and shares of the capital stock of the American Ice Company; that plaintiff was the brother of Otto Heinze and Arthur P. Heinze, who were members of said firm, and was himself a member of the firm and interested in its progress and welfare; that plaintiff was the owner of a large amount of the stock or bonds, or both, of said companies, the securities or obligations of which had been so pledged to secure loans to said firm of Otto Heinze & Co., with the exception of the Ætna Indemnity Company and the Pennsylvania Knitting Mills Company, and was also interested in all or some of said companies as an officer, director, or both; that plaintiff on or about said date was a borrower of money aggregating over $2,750,000 from eleven banks and trust companies in New York, one bank in Chicago, two trust companies of Massachusetts, and the State Savings Bank of Butte, Mont., and that said loans were secured to a great extent by stock or bonds owned by the plaintiff in said United Copper Company, Davis-Daly Copper Company, La France Copper Company and American Ice Company; that on said date plaintiff was president of the Mercantile National Bank, which had advanced large sums of money to said firm of Otto Heinze & Co. and to plaintiff and held as collateral thereto a large amount of the stock of said companies, the stock and obligations of which were pledged to secure the loans to said firm of Otto Heinze & Co.; that on said date the market value of the securities pledged as collateral to the said loans to Otto Heinze & Co. was greatly depreciated, and the value of the securities at the current market price was less than twenty-five per cent in excess of the loan; that the defendant bank was then under

examination by the Banking Department of the State of New York, and as a result thereof defendant was notified that the loan to Otto Heinze & Co. must be paid or that additional security must be provided therefor if the bank was to continue to do business; that on or about said day these facts were known or were made known to the plaintiff, and in order to protect the loans of Otto Heinze & Co. and to prevent the immediate sale by the defendant of the stock and bonds which were held as collateral security for said loans and in order to prevent the offering for sale on the stock market of said securities and in order that the market price for said securities might be maintained and not depreciated by such sales, or offerings for sale, the plaintiff delivered to the defendant as further collateral to said loans the cash and securities specified in the complaint; that notwithstanding the receipt of such additional security, the Banking Department continued to object to said loans of Otto Heinze & Co. and to demand that they be paid at once; that " Thereupon the defendant bank, with the express authority and approval of plaintiff, and upon notice to him, did sell and dispose of all said collateral at public sale on the New York curb market, and applied the proceeds of such sale to the payment of the loans of Otto Heinze & Co." These allegations are followed by the prayer for relief that the complaint be dismissed, with costs. The evidence shows that the sale of the securities by defendant was made on October 23, 1907.

The judgment in favor of the plaintiff was not granted on the theory of the conversion of the securities as alleged in the complaint, but on the theory, in part, of the answer that they were received by the defendant as collateral security for the loans of said firm of Otto Heinze & Co. as alleged in said defense and that they were converted by the sale admitted in said defense, which it is claimed was had without the statutory notice of ten days required by section 201 of the Lien Law (Consol. Laws, chap. 33; Laws of 1909, chap. 38) and advertising as required by section 202 thereof. (See, also, Lien Law [Gen. Laws, chap. 49; Laws of 1897, chap. 418], §§ 81, 82, as amd. by Laws of 1899, chap. 369.) The inference that they were sold without such statutory notice and advertisement is drawn from the fact that sufficient time

did not elapse between the receipt of the securities and the sale thereof to enable the defendant to give it. It is not at all clear that those provisions of the Lien Law apply to liens other than statutory liens; but it may be that they apply to the lien on property pledged as collateral security and it was so deemed in *Gandy* v. *Collins* (160 App. Div. 525), but the Court of Appeals in reversing that decision expressed no opinion on that point (214 N. Y. 293). The learned referee was finally of opinion that the provisions of the defense lastly quoted do not constitute allegations that the sale of the securities was made with the authority and the approval of the plaintiff and upon notice to him. For the purpose of the motion to dismiss the complaint, the defendant conceded that the plaintiff was not a member of the firm of Otto Heinze & Co. as alleged in this defense. The learned referee was of opinion that the averment with respect to the sale with the consent and approval of the plaintiff, and on notice to him, was too general to serve the purpose of proving that such was the fact by the plaintiff's introducing the defense in evidence. He rightly ruled that although the relation of pledgor and pledgee existed, the sale could be made by special agreement without giving the statutory notice, but he was of opinion that these allegations did not show a special agreement. The referee having decided that the sale by the defendant constituted a conversion, proceeded to consider the evidence with respect to the manner in which the sale was made, and determined that some of the securities were sold for their value and others were sold for considerably less than their value, and charged the defendant with the difference. The plaintiff appealed on the ground that the recovery should have been for a larger amount, and the defendant appealed on the ground principally that the allegations of the defense which the plaintiff introduced in evidence as proof of the facts prevented a recovery.

We are of opinion that the learned referee erred in holding that the sale and application of the proceeds thereof on the indebtedness of the firm of Otto Heinze & Co. was not with the consent and approval of the plaintiff and upon notice to him. It may well be that a witness could not have been permitted to testify in the language of the defense if objection

had been taken thereto, but the plaintiff is in no position so to contend now, after introducing the defense as part of its affirmative case precisely as if it had called a witness to testify thereto. It is quite clear that if no objection had been interposed it would have been competent for the plaintiff to have proved the facts in the *form* in which they are alleged in the defense. At a session before the referee after this defense had been thus introduced in evidence, counsel for the plaintiff requested leave to withdraw the exhibit as evidence, and on objection taken by the defendant the referee denied the application. It may be that in so denying the application, the referee had in mind that he would construe the defense as he finally did construe it, in favor of the plaintiff, and that if he had not been of that opinion, he would have permitted the withdrawal of the exhibit as evidence. Notwithstanding the former ruling of the referee unfavorable to the plaintiff, doubtless the attorney for the plaintiff in offering this defense as evidence in favor of his client did so in the confident expectation that it would not be regarded as proof of facts fatal to a recovery; but, nevertheless, while it stands we are of opinion that it must be given that effect. Being of this opinion, it is unnecessary to consider the other questions with respect to the conduct of the sale of the securities, for we think, as already indicated, that there should be a new trial, on which the other objections now raised may be obviated.

It follows that the judgment should be reversed and a new trial granted before a referee to be named in the order, if the stipulation for the reference, which is not in the record, requires the trial before a referee, and if not, then a new trial is ordered generally, with costs to appellant to abide the event.

DOWLING, SMITH, PAGE and MERRELL, JJ., concurred.

Judgment reversed and new trial ordered before another referee to be named in the order, if the stipulation requires a trial before a referee; otherwise, a new trial ordered generally, with costs to appellant to abide event. Order to be settled on notice.