In the Matter of the Estate of NAJEEB KIAMIE, Deceased. FAREED KIAMIE, as Executor of NAJEEB KIAMIE, Deceased, Appellant; COLONIAL TRUST COMPANY, Respondent.

Argued October 17, 1955; decided November 23, 1955.

*Sidney A. Fine, Max Rosner* and *Arthur Karger* for appellant.  I. The alleged public sale of the collateral was invalid as a matter of law since the bank failed to comply with the common-law and statutory requirements for a public sale.  (*Cole* v. *Manufacturers Trust Co.,* 164 Misc. 741; *Eppert* v. *Lowish,* 91 Ind. App. 231; *Laclede Nat. Bank* v. *Richardson,* 156 Mo. 270; *Dykers* v. *Allen,* 7 Hill 497; *Gandy* v. *Collins,* 160 App. Div. 525, 214 N. Y. 293; *Jones* v. *National Chautauqua Co. Bank,* 272 App. Div. 521; *Jacobs* v. *National Bank of Far Rockaway,* 208 Misc. 923; *Toplitz* v. *Bauer,* 161 N. Y. 325.)  II. The bank waived the provisions of the note authorizing it to sell the collateral without notice to the owner; and it was consequently powerless to sell the stock here involved without first giving ten days' notice of the time and place of sale, as required by section 201 of the Lien Law.  The one day's notice of sale, given by the bank only to some of the parties entitled to notice, was inadequate as a matter of law.  (*Toplitz* v. *Bauer,* 161 N. Y. 325; *Gillet* v. *Bank of America,* 160 N. Y. 549; *General Phoenix Corp.* v. *Cabot,* 300 N. Y. 87.)  III. The waiver of notice of sale died with decedent, and any sale thereafter made without the notice required by

law was invalid. (*Francis* v. *Ferguson,* 246 N. Y. 516.) IV. The bank did not acquire valid title to the securities in question by the sale purportedly held on November 15, 1933, in view of its failure to comply with section 104 of the Banking Law. (*Tooker* v. *Inter-County Tit. Guar. & Mtge. Co.,* 295 N. Y. 386.) V. The Surrogate erred in refusing to compel respondent to produce the Leidesdorf report at the trial, as well as in rulings on the inspection and admissibility of various other records and documents. (*Smith* v. *Rentz,* 131 N. Y. 169; *Carradine* v. *Hotchkiss,* 120 N. Y. 608; *Saal* v. *Katz,* 81 Misc. 239; *Matter of Kevill,* 166 Misc. 230.)

*Harry Rodwin, Monroe Goldwater, Richard M. Goldwater* and *Bernard Katz* for respondent. I. The pledged collateral was actually sold at public auction at the time and place specified in the notice of sale. II. The public sale of the collateral in question was valid and proper and in conformity with all necessary legal requirements. (*Mount Vernon Trust Co.* v. *Bergoff,* 272 N. Y. 192; *Bay Parkway Nat. Bank* v. *Shalom,* 270 N. Y. 172; *President & Directors of Manhattan Co.* v. *Cocheo,* 256 App. Div. 560; *Amend* v. *Hurley,* 293 N. Y. 587; *Purvin* v. *Grey,* 271 App. Div. 954; *Toplitz* v. *Bauer,* 161 N. Y. 325; *Bailey* v. *American Deposit & Loan Co.,* 52 App. Div. 402, 165 N. Y. 672; *Smith* v. *Craig,* 211 N. Y. 456; *Jacobs* v. *National Bank of Far. Rockaway,* 208 Misc. 923; *Turner* v. *Metropolitan Trust Co.,* 207 F. 495; *Bush* v. *Adams,* 165 F. 802; *Matter of Mertens,* 144 F. 818.) III. The bank fully complied with all statutory and common-law requirements for a public sale. (*Cole* v. *Manufacturers Trust Co.,* 164 Misc. 741; *General Phoenix Corp.* v. *Cabot,* 300 N. Y. 87.) IV. The waiver of notice of sale was effective regardless of the death of the maker. (*Matter of Tabbagh,* 167 Misc. 156.) V. The court below properly denied the request of appellant-petitioner for inspection of its exhibit K for identification. (*Jones* v. *Nichols,* 42 App. Div. 515; *Shelton* v. *Holzwasser,* 46 Misc. 76; *Siegel* v. *Dubinsky,* 56 Misc. 681; *Mengis* v. *Fifth Ave. Ry. Co.,* 81 Hun 480.)

DESMOND, J. While this is in form a Surrogate's Court discovery proceeding, the dispute which it brings up for decision is as to whether or not respondent trust company converted corporate stock belonging to the estate of which appellant is execu-

tor, and which stock had been held by the trust company as collateral security for a promissory note made by appellant's testator. The underlying controversy is as to whether the pledgee's purported public auction sale of those shares was valid.

The events took place many years ago but this proceeding was brought in time and there is no question of time limitations. Since the order below must be reversed on a single ground — inadequacy of the notice of sale — it will not be necessary to enlarge on the background facts. On September 21, 1933, the trust company took from Najeeb Kiamie a renewal note due October 23, 1933, for $26,000, representing the unpaid balance of much larger previous loans. At the time of that renewal Kiamie was sojourning in his native Syria but he had left with the trust company blank signed notes for purposes of renewing his loans. As collateral security for this September renewal, as for previous loans, there was lodged with the bank (besides some other property not here involved) all the shares of the capital stock of four corporations owned by decedent and his family. Those corporations had title to nine parcels of mortgaged real property in New York City. Before decedent had left for Syria in June, he had signed a previous $26,000 renewal note due in three months and had promised to pay $1,000 in reduction of principal at the maturity of that note. While decedent was abroad, his children who held a power of attorney from him had various conversations and negotiations with the trust company concerning the financial difficulties of the Kiamie corporations which included arrears in taxes and mortgage interest, and resulting threats of mortgage foreclosures. Without going into details, it may be said that those difficulties were serious and pressing. Early in September members of the Kiamie family told the trust company officers that the $1,000 promised for September by their father could not be paid. The trust company, on September 21, 1933, accepted a further thirty-day renewal of the $26,000 note (using another blank, signed note left with the trust company by decedent) with a new promise by the Kiamies to pay $1,000 principal on maturity. Numerous further conferences were then held but without tangible results. On October 23, 1933, the September note (last in the series)

went into default and no payment was made thereon. The affairs of the corporations went from bad to worse. Najeeb Kiamie, the father, died in Syria on November 7, 1933. On November 10th, after the Kiamie family had refused to give an assignment of rents to a mortgagee and after a foreclosure action had been commenced and receivers appointed as to some of the properties, the trust company notified the Kiamie family that the collateral would have to be sold. On November 13th, the trust company sent to the widow and three of the Kiamie children and to their attorney (two of these children and the attorney were the executors named in the father's will) written notice that the stocks would be sold at public auction at an auction house in New York City at 12:30 o'clock P.M. on November 15, 1933. Notice of the sale was published in two New York City morning newspapers on November 14th and 15th and the collateralled stocks were listed in the printed catalogue of the auctioneer. No one representing the Kiamie family or their corporations appeared at the sale. The stocks were struck down (in one lot) to the trust company at its bid of $5,000, and it took title thereto in the name of its nominee.

The defaulted promissory note contained this language: "Upon the non-payment of this note * * * the Trust Company shall have the right to sell, assign and deliver the whole or any part of the property hereinabove specifically described * * * at any time or times either at the New York Stock Exchange or at any other Exchange or at any broker's board, or at public or private sale, either for cash or on credit or for future delivery, without demand, advertisement or notice, which are hereby waived * * *. Upon any sale as aforesaid, the Trust Company may purchase and hold the whole or any part of the property sold, free from any claim or right of redemption of the undersigned, which is hereby waived and released."

We hold, as did the courts below, that the trust company had the right to sell the security and to bid at the sale. However, the published notice of sale, we hold, was so defective in its description of the property that the sale itself was entirely void. The auctioneer's advertisement as published in the two newspapers announced the public auction sale at the auction rooms of a number of items in addition to the Kiamie stocks.

As to the Kiamie stocks, the only references or descriptions were these:

> " 5 shs. Sherman Investing Corp. (N. Y.)
> 3 shs. Kiamie Holding Corp. (N. Y.)
> 3 shs. Haviland Holding Corp. (N. Y.)
> 100 shs. La Dana Holding Corp. (N. Y.) "

No information whatever was given to the reading public as to what, if anything, those shares represented. There was no disclosure as to what kind of business, if any, the corporations conducted or as to what their assets or liabilities were, and no statement that the shares offered for sale were the whole outstanding capital stock of the corporations. If these had been listed or otherwise well-known stocks, the description might have furnished a sufficient clue (see *Wheeler* v. *Newbould,* 16 N. Y. 392, 397; *Dykers* v. *Allen,* 7 Hill 497). But all we had here were the meaningless names of four of the innumerable business corporations chartered in New York State (public records show that in the early 1930's more than 20,000 business corporations were chartered annually in New York State, and at least 100,000 such domestic business corporations filed annual tax returns).

A pledgee's duty adequately to advertise his sale is not imposed by any statute but by " the general maxims of equity " which govern pledges (*Toplitz* v. *Bauer,* 161 N. Y. 325, 332). Equity assigns to pledgor and pledgee a trust relationship with resulting obligations on the pledgee (*Torrey* v. *Bank of Orleans,* 9 Paige Ch. 649, 663; *Toplitz* v. *Bauer, supra,* p. 332; *Jones* v. *National Chautauqua Bank,* 272 App. Div. 521, 527; Colebrooke on Collateral Securities [2d ed.], § 87). One of those obligations (on mortgagee and pledgee) is to " use every effort to sell the estate under every possible advantage of time, place, and publicity " (Perry on Trusts and Trustees [4th ed.], § 602o; see *Cole* v. *Manufacturers Trust Co.,* 164 Misc. 741, 747). The pledgee must do nothing to impair the pledge's value (*Toplitz* v. *Bauer, supra*; *Gillet* v. *Bank of America,* 160 N. Y. 549, 560, and authorities cited). A notice of sale which does not identify the property sold cannot be a sufficient one (Perry on Trusts and Trustees [4th ed.], § 782; *Newman* v. *Jackson,* 25 U. S. 570), since the notice must be reasonable and customary (*Gruman* v. *Smith,* 81 N. Y. 25, 28; *Small* v. *Housman,* 208 N. Y. 115, 121).

Obviously, the mere listing of a certain number of shares of an unknown corporation falls far short of compliance with these requirements. While we need not go so far as did the learned author of "Drastic Pledge Agreements" (Seasongood, 29 Harv. L. Rev. 277) who argued that such a notice of sale should disclose the owner's name, the name of the pledgee and the amount due on the pledge, we find it impossible to announce detailed rules applicable to every such notice of sale. But the notice at the least must contain enough information to alert investors and to invite competition (*Dykers* v. *Allen, supra,* pp. 499–500; *Eppert* v. *Lowish,* 91 Ind. App. 231, 237, 238; *Laclede Nat. Bank* v. *Richardson,* 156 Mo. 270, 280, 282–283).

The power conferred on the pledgee by this note to sell at public or private sale and without advertisement or notice, leaves intact the law's own requirement that every such sale be conducted in good faith (*General Phoenix Corp.* v. *Cabot,* 300 N. Y. 87, 94; *Industrial & General Trust* v. *Tod,* 180 N. Y. 215, 225, 226; *Cole* v. *Manufacturers Trust Co., supra*; Perry on Trusts and Trustees [4th ed.], § 602q; Restatement, Security, § 49). While the pledgee under such an agreement as this may become the purchaser (*Bryan* v. *Baldwin,* 52 N. Y. 232, 235; *General Phoenix Corp.* v. *Cabot, supra,* p. 94), his exercise of that right makes it all the more necessary that the law's insistence on ample notice be heeded. We need not add that our references to " good faith " carry no implication that the lender here was guilty of actual bad faith.

The Surrogate here held that the requirements of section 202 of the Lien Law (two successive weeks' publication and sale not less than fifteen days after first publication) were not applicable to a sale of pledged property. He thought that under section 2 of that law this respondent was not such a " lienor " as is bound by the Lien Law. There are decisions to the contrary (*Gandy* v. *Collins,* 160 App. Div. 525, revd. on another ground 214 N. Y. 293; *Jacobs* v. *National Bank of Far Rockaway,* 208 Misc. 923; *Jones* v. *National Chautauqua Bank,* 272 App. Div. 521, 527, *supra*). We do not think the question arises on this record, since the borrower here plainly and effectively waived (see *Fullerton* v. *Northern Bank of N. Y.,* 184 App. Div. 37, 43) any particular kind of " advertisement or notice ". The result was, as explained above, that there remained only the

equitable obligations of good faith, which includes as to an auction sale appropriate notice by advertisement (see 72 C. J. S., Pledges, § 59, subd. a, par. [2]).

The order appealed from should be reversed, with costs in all courts, and the proceeding remitted to the Surrogate's Court for further proceedings not inconsistent with this opinion.

CONWAY, Ch. J., FROESSEL, VAN VOORHIS and BURKE, JJ., concur; DYE and FULD, JJ., taking no part.

Order reversed, etc.