WESTBURY ELECTRONIC CORP., Plaintiff, *v.* ANGLO-AMERICAN TOTALISATOR COMPANY, INC., et al., Defendants.

Supreme Court, Special Term, Nassau County, February 3, 1967.

*Hall, Casey, Dickler & Howley* for plaintiff. *Marshall, Bratter, Greene, Allison & Tucker* for defendants.

PAUL J. WIDLITZ, J. This is a motion for a temporary injunction seeking to stay the sale " by public auction or otherwise " of 40 shares of capital stock of Anglo-American Totalisator Company, Inc. by the defendant Anglo-American Totalisator Company, Inc. as pledgee.

The complaint seeks a permanent and temporary injunction reciting the following facts: On June 6, 1962 an agreement was entered into by the four stockholders of Anglo-American Totalisator Company, Inc. and Anglo-American Totalisator Company, Inc. imposing certain restrictions on the transferability of their stockholdings. Paragraph 1 of the said agreement placed certain restrictions on the stock owned by Mr. Lease and reads as follows: " Lease shall not in any manner whatsoever dispose of or encumber any of the shares of stock of the Corporation which may now or hereafter be owned by him, nor shall any of such shares be transferable without the written consent of all of the other Stockholders or, in the absence of such consent, unless Lease shall have received a bona fide offer from a prospective purchaser of said shares or a prospective lender upon the security of said shares, and he shall first offer to dispose of or encumber the shares to such other Stockholders upon the terms and conditions as hereinafter provided." Restrictions on the stock owned by the other parties were contained in separately numbered paragraphs and differ from those restrictions set forth above, and all shares of stock had the necessary indorsement advising of the stockholders' agreement. Simultaneously with the signing of the aforesaid stockholders' agreement, Lease deposited his 40 shares of stock of the corporation with the

Anglo-American Totalisator Company, Inc. as collateral security for a debt owing in the amount of $95,000 and increased by further loans to $188,246.16. The note representing said indebtedness contained the following provision: "Upon the non-payment of this note or of any installment of interest thereon, the said payee is hereby authorized to sell, assign and deliver the whole or any part of the aforesaid property at public or private sale at the option of said payee without either advertisement or notice, which are hereby expressly waived. If said property is sold at public sale, said payee may purchase the whole or any part thereof free from all right of redemption or other right or claim on the part of the undersigned, all of which are hereby waived and released." Subsequently two separate unrelated loans were made by Roosevelt Raceway, Inc. to Western Totalisator Mfg. Co. totaling $250,000 and guaranteed by Mr. Lease. This guarantee was secured by the assignment to Roosevelt by Lease of his entire right, title and interest in the same 40 shares of capital stock of Anglo-American Totalisator Company, Inc., subject to the lien thereon created by the prior indebtedness of Lease to Anglo-American, totaling $188,246.16. At the time said guarantee was given, a letter dated October 29, 1965 was sent to Roosevelt Raceway, Inc. by Lease advising them of the restrictions of transferability as contained in the stockholders' agreement of June 6, 1962, and further advising them that there was a prior lien on said 40 shares by reason of the indebtedness of Lease to Anglo-American as represented in the note executed by Lease on June 6, 1962 above recited in part. In effect, Roosevelt Raceway was advised that the 40 shares of stock were placed as security with them subject to the restrictions of the stockholders' agreement dated June 6, 1962 and the note given to Anglo-American by Lease in the amount of $188,246.16.

Roosevelt Raceway, Inc. assigned to the plaintiff, Westbury Electronic Corp., all its right, title, and interest in its loan to Western Totalisator Mfg. Co., as well as the guarantee from Lease. Lease defaulted in his payments to Anglo-American Totalisator Company, Inc., and said company now seeks to sell at public auction, as pledgee, the 40 shares of stock. The published notice of auction stated that the shares of stock were subject to and transferable only upon compliance with the agreement dated June 6, 1962; that the actual value of the shares is not known; and that the sale will issue under certain terms and conditions which contained, among other things, the following provision: "2. Said sale shall be subject to the rights of Richard I. N. Weingart, Saul Hammer and General Totalisator Corporation, the other stockholders of Anglo-American Totalisator Com-

pany, Inc., pursuant to the above mentioned agreement dated June 6, 1962, amongst Anglo-American Totalisator Company, Inc., General Totalisator Corporation, Saul Hammer, Richard I. N. Weingart and Joseph G. Lease, to elect to purchase said shares of stock within 30 days after written notice of a bona-fide offer therefor either for the amount of such bona-fide offer or at a price equal to the book value of said shares of stock, as determined by the certified public accountant serving as the regular auditor of Anglo-American Totalisator Company, Inc., as of the end of the month next preceding the month in which such election is made; the determination of such book value to include an allowance for good will, trade name or similar intangible asset. Anglo-American also reserved the right to withdraw the shares of stock from sale for any reason whatsoever.

The plaintiff now seeks a temporary and permanent injunction to enjoin the defendant corporation from selling the 40 shares of Anglo-American stock by public auction or otherwise unless such sale is made free and clear of the provisions of the agreement dated June 6, 1962, or, in the alternative, unless Anglo-American ascertains and makes known in advance of any public sale or auction the price they are willing to pay per share, that such price per share be an upset price at the sale, and that the terms and conditions of public sale in advance be published as unconditional terms and not subject to amendment or withdrawal by Anglo-American.

When the 40 shares of stock in question were placed with the defendant as collateral security simultaneously with the execution of the stockholders' agreement, there was an apparent waiver of the transfer restrictions contained in the agreement between the various stockholders. In the note and collateral agreement of June 6 reciting the indebtedness and security, the payee was authorized to sell at public or private sale and to purchase the whole or any part thereof. In effect the pledge of stock was expressly freed from those restrictive provisions contained in the stockholders' agreement, and the payee stands before this court as a pledgee bound by those equitable rules which necessarily bind the act of any pledgee entrusted with the disposition of any security he may hold. The law requires that the pledgee dispose of the pledged collateral in good faith for equity has imposed upon the pledgor and pledgee a trust relationship (*Toplitz* v. *Bauer,* 161 N. Y. 325; *Matter of Kiamie,* 309 N. Y. 325). If a public sale is to be held certainly the bidding must be a knowledgeable type of bidding and not just merely speculative. Those objectives required by reason of the trust relationship could not be reached if the terms and conditions of

the " public sale " contemplated by the defendant were followed. A bidder would be unable to knowingly value the shares of stock for bidding purposes and the procedure would be practically a farce.

Since it is apparent that the pledgee must do nothing to impair the pledgor's value (*Matter of Kiamie, supra*, p. 330), the pledgor should anticipate that any notice of sale would adequately identify the property to be sold. A notice of sale that does not sufficiently describe the property so as to permit an evaluation does not comply with the requirement of reasonableness (*Matter of Kiamie, supra; Gruman v. Smith*, 81 N. Y. 25; *Small v. Housman*, 208 N. Y. 115). The contents of the notice of sale published by the defendant are vague and not sufficiently attractive to allure and alert investors and to invite competition. Neither can defendant's pretention of protecting the rights of the other stockholders, who by their actions may be deemed to have acquiesced in the transactions between the defendant and Lease, be considered as the acts of one dealing with trust property in such a way as not to destroy or impair its value (*Toplitz v. Bauer, supra*). The other parties to the stockholders' agreement have apparently acquiesced in the transaction and the obligation of the Anglo-American Totalisator Company, Inc. as pledgee is to sell in good faith and receive the highest possible amount for the security. A pledgee should not pretend to act as the protector for those who fail or do not desire to pursue such rights as they may have (*Estate Funds v. Burton-Fifth Ave. Corp.*, 111 N. Y. S. 2d 596; *Allen v. Biltmore Tissue Corp.*, 2 N Y 2d 534). This is not to say, however, that the one who buys at such auction will not be bound by the restrictions of the stockholders' agreement as to the transfers of the stock by the said purchaser.

To obtain an injunction, the plaintiff must establish a clear legal right to the relief sought and irreparable harm if an injunction is not granted (*Barricini, Inc. v. Barricini Shoes*, 1 A D 2d 905; *Smith v. Robilotto*, 25 A D 2d 454; CPLR 6301). Irreparable injury has been defined as a continuing harm caused by the act sought to be restrained if permitted to continue during the pendency of the action (*Allied-Crossroads Nuclear Corp. v. Atcor, Inc.*, 25 A D 2d 643); a clear legal right is held to mean an indication of a strong possibility of ultimate success in the action together with immediate need (*Smith v. Robilotto, supra*).

It follows then that the plaintiff, as assignee of Lease, has shown a clear legal right to the relief sought and has shown irreparable harm if the act is not restrained. Accordingly a temporary injunction is granted. However, should the defend-

ant deem it desirable to proceed with the sale, at least five days before the adjourned sale date of the pledged stock, defendant shall serve and file an undertaking in the amount of $235,000, conditioned that if the plaintiff shall recover judgment against the defendant for a permanent injunction in conformity with the allegations of the complaint, then the defendant shall pay to plaintiff any loss sustained by reason of the vacating of the injunctive provisions of the order to be entered herein.

Settle order on notice, providing for plaintiff's undertaking in the sum of $30,000.