Morrie Slifkin, J.
Plaintiff moves by an order to show canse for a preliminary injunction. Defendant cross-moves to vacate an ex parte temporary restraining order contained in said order to show cause and for related relief.
The sole issue to be considered by the court at this juncture is whether plaintiff is entitled to a preliminary injunction enjoining defendant’s threatened violation of the contract between the parties and requiring defendant to perform its terms and conditions pending the final determination of this lawsuit.
*561 On oral argument, the Public Service Commission of the State of New York was granted leave to take part in these proceedings as amicus curiae.
Plaintiff has instituted a plenary action against defendant alleging two causes of action and seeking the following relief: (a) a permanent injunction enjoining defendant from violating the contractual terms and conditions between the parties and directing specific performance thereof, and (b) a judgment for damages which may be sustained by the plaintiff by reason of any breach of the contract.
The plaintiff is a major public utility regulated by the laws of this State. Its facility supplies electric power to more than 168,000 residential consumers in addition to schools, hospitals, and industries. The area served includes Rockland and Orange Counties and part of Sullivan County in this State and portions of the States of New Jersey and Pennsylvania.
Defendant is a major international producer of crude oil which it procures from various foreign sources, including the nation of Libya. The sales and operating revenues for the calendar year of 1970 are alleged to be in excess of one billion dollars.
The plaintiff and defendant, both sophisticated commercial entities in specialized fields, entered into an agreement dated September 1, 1969. Pursuant to the terms of that agreement, defendant was leased a parcel of land situated at Tomkins Cove, New York. The contract required defendant to erect on this parcel a storage facility to which defendant would deliver plaintiff’s requirements of low sulfur No. 6 fuel oil. The terms of that agreement extended from July 1, 1969 through September 30, 1979. The contract expressed an aggregate estimate of 7,695,000 barrels of low sulfur No. 6 oil to be supplied over the first half of the contract period, with the further provision that remaining estimated requirements were to be furnished by the plaintiff to defendant at least 90 days in advance of each of the calendar years 1975 through 1979.
For the period of the contract ending September 30, 1974, the parties agreed upon a base price of $2.14 per barrel. With relation to the period from October 1, 1974 through September 30, 1979, the price was to be renegotiated and in the event of disagreement, the contract was to be terminated as of October 1, 1974. Other cost factors, not here material, were to be averaged and added to the base price during the first five years of the contract period. !
It is significant that low sulfur No. 6 fuel oil was required for compliance with the standards promulgated by the New York State Air Pollution Control Board (10 NYCRR 200.4 [a]).
*562 By letter dated April 12, 1971, defendant advised the plaintiff that the price of low snlfnr No. 6 crude oil was increased hy 97.7 cents per barrel, effective as of that date, for all deliveries made pursuant to the contract dated September 1, 1969.
Plaintiff refused to accept the announced price increase. Defendant, by its executive vice-president hy letter dated April 16,1971, advised as follows: 11 Our deliveries of fuel oil to you will continue if you agree to pay our invoices on the price basis set forth in our April 12th letter to you, such payments to be without prejudice to the legal rights of both parties. If we do not have in hand, prior to the close of business on April 21, 1971, your written agreement to pay our invoices to you on this basis, we will make no further deliveries. ’ ’
Thereafter, plaintiff instituted this action and as hereinabove set forth, was granted a temporary restraining order enjoining defendant from ceasing delivery of the fuel oil as threatened in the order to show cause which instituted this motion for a preliminary injunction.
This apparently arbitrary action of the defendant was based upon the “unprecedented action” of the government of the country of Libya in raising the price of crude oil produced in that country to Western oil companies including the defendant. The exchange of correspondence above referred to was intended to pass the cost of such increase to plaintiff as a consumer of the fuel oil furnished by defendant.
The scope of the instant motion is narrow and limited insofar as the merits of the controversy between the parties are concerned. Except as hereafter set forth, the court is not required to, nor will it, pass upon the merits of the causes of actions set forth in plaintiff’s complaint or on the merits of the affirmative defenses and counterclaim asserted in defendant’s answer. It is to he noted that under the provisions of the contract, its terms are to be interpreted according to the laws of the State of New Jersey. Therefore, the effect of the doctrine of commercial impracticability (Uniform Commercial Code, § 2-615), raised by defendant to justify its unilateral attempt to impose additional terms for the continued performance under the contract between the parties, is left for determination at the plenary trial of this action. The^ effect of the doctrine of force majeure urged hy defendant as ah additional justification for its position must also bei determined at the plenary trial of this action. Whatever effect which may he given to these defenses at trial, it is clear that a determination on a motion ifor preliminary injunction does not and cannot resolve the ultimate issues in the action. *563 (Columbia Gas of N. Y. v. New York State Elec. & Gas Corp., 56 Misc 2d 367; Ming v. Simpkins, 59 Misc 2d 853.)
For plaintiff to succeed in the instant motion, plaintiff must establish and demonstrate: (1) it has a valid cause of action; (2) there is a reasonable probability of its success; (3) an immediate need; (4) its proper status as a party; and (5) jurisdiction in this court. (See Park Terrace Caterers v. McDonough, 9 A D 2d 113; Westbury Electronics Corp. v. Anglo-American Totalisator Co., 52 Misc 2d 1060, revd. on other grounds 28 A D 2d 683.)
The court finds that plaintiff has established the foregoing requirements in the instant motion papers.
Defendant opposes the granting of the injunctive relief on further grounds that there is no demonstration of irreparable injury and that plaintiff has an adequate remedy at law.
The plaintiff alleges in its pleading and asserts in the moving papers that the plaintiff depends upon the low sulfur crude oil supplied by defendant to generate power for its consumers and further, to comply with the requirements of the New York State Department of Environmental Conservation relating to air pollution caused by the burning of fuel oil hereinabove referred to. Both the pleading and assertion are denied by defendant. Further, defendant asserts that there are available to plaintiff other sources of supply of the oil in question for the operations of plaintiff, although concededly at a price higher than that set forth in the contract.
In an ordinary commercial transaction, the ability to compute specific dollar damages would preclude the granting of injunctive relief. (Fair Sky v. International Cable Ride Corp., 23 A D 2d 633, 634 and cases cited therein.)
Here, however, plaintiff has a specialized and unique status as a public utility. As pointed ont by the Public Service Commission in its affidavit amicus curiae, the general public users and consumers are the persons who would be dramatically and adversely affected by either an interruption or termination of power furnished by plaintiff. In balancing the equities, the court must consider the public interest. ‘ ‘ In ruling on a motion for a preliminary injunction, the courts must weigh the interests of the general public as well as the interests of the parties to the litigation * * * an injunction against conduct that is interfering with an important public project or is threatening to impair the performance of a public duty should be more readily available than an injunction that is not needed to protect any interest other than the rights of the parties before the court.” (7A Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 6301.21.)
*564 As a major power generating facility, plaintiff is a part of the so-called New York Power Pool which is, in turn, tied into the Northeastern corridor grid network responsible for the electric power needs of a vast area. The Public Service Commission of New York reminds the court that there presently exists a “ serious shortage of electric power reserves ” so that “ any reduction of plaintiff’s generating capacity would vitally affect the supply of electricity to the consuming public throughout the plaintiff’s operating territory.”
If the injunction is granted, defendant will suffer damage subject to the outcome of this litigation. If the injunction is denied, plaintiff and the consuming public will suffer damage subject to the outcome of this litigation. The nature of the problem compels the conclusion that the damage to the plaintiff or to the defendant under either alternative would be equal in dollars. However, absent an injunction and the failure of the supply of fuel oil, the court cannot estimate or determine the damage which would be sustained by the general public.
The submitted papers establish that defendant will not continue its promised performance unless plaintiff is willing to pay the higher price demanded for continuation of performance. Failing that, defendant threatens to unilaterally terminate its oil deliveries.
Hnder these circumstances, for the protection of the public, the court is of the opinion that the status quo must be preserved subject to the outcome of this litigation. It is no answer to say that the increased cost can be passed on to the consumer and that, if plaintiff is ultimately successful, the recovery in damages against defendant can be distributed in some appropriate way by plaintiff to the users of its power. Even a cursory review of the problems engendered by such a course defies a successful or equitable solution. The welfare of the general public is the major factor in the decisional process involved. (See De Pina v. Educational Testing Serv., 31 A D 2d 744, 745; International Ry. Co. v. Barone, 246 App. Div. 450.)
To support this conclusion, it should be pointed out that a preliminary injunction will be denied on the ground of the existence of an adequate remedy at law only when the legal remedy is as satisfactory as an injunction (Republic Aviation Corp. v. Republic Lodge No. 1987, International Assn. of Machinists, 10 Misc 2d 783, 797). No such conclusion can be reached in this instance to support the position of defendant in opposing injunctive relief.
In view of (1) the requirement of CPLE 6312 (subd. [b]) that an undertaking be furnished by the plaintiff herein; (2) *565 the substantial pecuniary sum involved in this lawsuit and (3) the unique nature of the plaintiff’s status as a public utility, the court will entertain the counsels’ stipulation as to a suitable undertaking to be fixed by the court or, such stipulation failing, the court will convene a conference between counsel for that purpose.
Counsel are to be commended for their excellent presentations on oral argument and in their briefs.
Submit order on notice providing for the fixing of an undertaking by plaintiff in an amount to be determined by the court in the manner suggested.