(August 7, 1979)

■ DAVID B. FRANKLIN, Respondent, v PEE DEE JAY AMUSEMENT CO., INC., et al., Appellants.—In an action, *inter alia,* to recover the sum of $21,000 pursuant to a loan agreement, defendants appeal from (1) an order of the Supreme Court, Nassau County, entered April 25, 1979, which, *inter alia,* granted plaintiff's motion for summary judgment and directed the defendants to transfer to the plaintiff all of the outstanding stock certificates of the corporate defendant and (2) a further order of the same court, entered May 15, 1979, which, upon plaintiff's motions to, *inter alia,* prohibit defendant Norberto from entering the premises of the corporate defendant and to account for the profits of the restaurant run by said corporate defendant, granted the motions by, *inter alia,* directing defendant Norberto to deliver to the plaintiff all books and records of the corporate defendant and to otherwise transfer to the plaintiff all indicia of ownership in said corporate defendant. Order entered April 25, 1979 modified by deleting the

third decretal paragraph thereof, which directed the defendants to deliver to the plaintiff all of the outstanding stock certificates of the corporate defendant, and substituting therefor a provision denying summary judgment as to the delivery of the stock. As so modified, said order affirmed. Order entered May 15, 1979, reversed, and motions denied. No costs are awarded on these appeals. Defendant Peter Norberto is the sole stockholder of the corporate defendant, Pee Dee Jay Amusement Co., Inc. (the corporation). The corporation operates a restaurant known as Sages in Mineola, New York. Norberto assumed ownership of the corporation in December of 1977 for the sum of $200,000. However, soon after the restaurant opened, business went into a slump. During the ensuing period, the plaintiff, David Franklin, approached Norberto about his acquiring an interest in the corporation. On November 1, 1978 the parties entered into an agreement whereby plaintiff agreed to lend the corporation up to $60,000 (at 10% interest per annum), as needed, within the next 90 days. Said loan was to be repaid within three years. In the event of a default on any of the installments, Franklin had the option of accelerating the entire loan. The agreement also provided that Franklin would have the option to immediately convert his loan into an equitable interest in the corporation equivalent to 50% of all the outstanding stock, said option to be exercised within the afore-mentioned 90-day period. Norberto was only to be held personally liable on the loan in the event of a "fraudulent or grossly negligent misstatement of the assets or liabilities of The CORPORATION". As security for the loan, all of the corporation's stock certificates were to be indorsed in blank by Norberto and held in escrow by Franklin's attorney. Upon proof of default, the escrowee would deliver the stock to Franklin. Upon proof of repayment of the loan in full, the stock would be returned to Norberto. In December of 1978, and after having loaned the corporation $21,000, Franklin decided to decline his option to contribute further sums and to obtain a 50% interest therein. By notice dated January 11, 1979, Franklin made written demand for payment, with the first installment due on February 1, 1979. By that same notice, Franklin submitted to the corporate defendant a series of promissory notes to be executed and delivered to him pursuant to Paragraph No. 1(a) of the agreement. The corporation failed to execute and deliver the aforesaid notes within 10 days of demand therefor and Franklin determined that there had been a default. By notice dated January 26, 1979, Franklin accelerated payment of the loan and demanded immediate payment of the entire $21,000, plus interest. No payment was made by defendants and on or about February 9, 1979, Franklin instituted this action to recover the sum loaned. In their answer, defendants asserted five affirmative defenses and a counterclaim. On March 22, 1979 Franklin moved to dismiss the affirmative defenses and counterclaim. Special Term, treating plaintiff's motion as one for summary judgment, dismissed the affirmative defenses and counterclaim and granted plaintiff judgment against both defendants for $21,000, plus interest. In addition, Special Term directed that defendants deliver to plaintiff all of the stock certificates of the corporate defendant pending satisfaction of the money judgment. Subsequently, the money judgment remained unsatisfied. Accordingly, Franklin, who now was in possession of the corporation's stock certificates, moved, *inter alia,* for an order prohibiting Norberto from entering the restaurant run by the corporation, directing him to deliver the books and records of the corporation and to otherwise turn over to plaintiff all indicia of ownership and control in the corporation. In an order entered May 15, 1979, Special Term granted the motion. Special Term properly treated plaintiff's motion to dismiss the affirmative defenses

and counterclaim as one for summary judgment. The plaintiff submitted sufficient documentary proof that he had loaned the defendants $21,000 pursuant to an agreement executed between the parties and that defendants, although given sufficient notice, defaulted in repaying the loan (see CPLR 3211, subd [c]). Defendants' claim that Special Term failed to give them adequate notice that the motion would be treated as one for summary judgment is belied by the affidavit submitted by the defendants' counsel in opposition to the motion. In it he stated that plaintiff's motion was, in effect, a motion for summary judgment. Moreover, in view of the fact that defendants totally failed to submit any proof or allege any facts in support of their position, Special Term properly granted plaintiff summary judgment since no triable issue of fact was raised (see CPLR 3212, subd [b]). In addition, Special Term did not abuse its discretion in holding defendant Norberto personally liable under the agreement. His failure to deliver the stock certificates to the plaintiff as security for the loan constituted a breach of the agreement. However, Special Term erred in ordering defendant Norberto to deliver all of the stock certificates and indicia of ownership in the corporate defendant to the plaintiff. Pursuant to the agreement between the parties, the stock certificates were to merely serve as collateral for the loan. As such, the transaction was governed by article 9 of the Lien Law. Thus, upon nonsatisfaction of the judgment herein, Franklin was required to serve notice upon the defendants that he intended to sell the stock certificates at a public auction to the highest bidder, unless, within 10 days from the service of said notice, the amount of the judgment was paid (see Lien Law, §§ 201, 202-b). This plaintiff failed to do. Rather, he merely "elected" to retain the stock certificates in full satisfaction of the judgment, asserting that Norberto had, by his actions, waived his right to redeem. However, the law is clear that Norberto had not lost his right to redeem the stock certificates. Section 203 of the Lien Law provides, in part: *"At any time* before such property is so sold, the owner thereof may redeem the same by paying to the lienor the amount due on account of the lien" (emphasis supplied). Since the lienor herein, Franklin, has not even notified the owner, Norberto, that he intends to sell the stock certificates, Norberto unquestionably has the right to redeem the same (see *Matter of Kiamie,* 309 NY 325; *Alper v Lupoli,* 17 NY2d 888). Aside from the foregoing, we note that Franklin's position is highly inequitable. Under the agreement, Franklin had the option of lending up to $60,000 to the defendants within the 90-day period with the option of converting the full loan into an equitable interest in 50% of the stock. After advancing only $21,000, he decided against exercising his option. The effect of Special Term's order, however, is to permit plaintiff to acquire 100% of the corporation's stock for only $21,000. Stated another way, Franklin would acquire twice the interest in the corporation than he was entitled to under the agreement for only a little more than one third of the sum agreed to under said agreement. This would result in unjust enrichment to the plaintiff. His argument that the corporation is virtually insolvent and that he is personally liable for tax liens on said corporation is irrelevant. At the time he entered into the agreement, he only agreed to accept the stock as collateral for the loan, nothing more. What may have happened to the financial status of the corporation subsequent to the making of the loan is beyond the scope of this action. In fact, Franklin was aware that the corporation was experiencing financial difficulties at the time he entered into the agreement. That was one of the reasons for the loan. In any event, in view of the fact that the

defendants have deposited the full sum of the judgment awarded, plus interest, plaintiff may now obtain satisfaction thereof. Mollen, P. J., Hopkins, Damiani and O'Connor, JJ., concur.