SUNSHINE BOOK COMPANY et al., Appellants, *v.* EDWARD T. McCAFFREY, as Commissioner of Licenses of the City of New York, et al., Respondents.

First Department, December 3, 1957.

*O. John Rogge* of counsel (*Rogge, Zucker, Fabricant & Gordon,* attorneys), for appellants.

*Robert E. Hugh* of counsel (*Seymour B. Quel* with him on the brief; *Peter Campbell Brown, Corporation Counsel*), for respondents.

VALENTE, J.  Appellant instituted suit against Edward T. McCaffrey, as Commissioner of Licenses of the City of New York, and George P. Monaghan, as Police Commissioner, seeking a declaratory judgment and injunctive relief.  While the complaint sought a declaration as to the invalidity and unconstitutionality of section 1141 of the Penal Law, and an injunction against the Police Commissioner restraining him from proceeding with prosecutions under that law, these issues are no longer pressed in view of the holding in *Roth* v. *United States* (354 U. S. 476) which sustained the constitutionality of the so-called obscenity statutes.  On this appeal from a judgment dismissing the complaint, we are concerned solely with the plaintiffs-appellants' demands for relief against the license commissioner.

Plaintiffs are the publishers and distributor of two magazines, '' Sunshine & Health '' and '' Sun Magazine '', which are claimed to be the official publications of national and international nudist organizations.  These publications were circulated throughout the country, and in 1951 were being distributed to, and sold by, newsdealers in New York City.  Prior to November 19, 1951, complaints were received by the commissioner of licenses concerning photographs of nude persons published in these magazines, which were being displayed and sold by some of the licensed newsdealers under the commissioner's jurisdiction.

After reviewing the contents of the various issues of plaintiffs' magazines, the commissioner, on November 19, 1951, caused a copy of the following notice to be delivered personally to each

of the approximately 1,200 newsdealers licensed by the Department of Licenses:

Department of Licenses
   City of New York

To All Newsdealers Licensed under the Jurisdiction of the Department
      of Licenses:

You are cautioned to discontinue the sale and to remove from display the following magazines or periodicals:

Sunshine and Health
Sunbathing for Health Magazine
Modern Sunbathing and Hygiene
Hollywood Girls of the Month
Hollywood Models of the Month

In the event you display or offer for sale any of the above identified publications on or after November 27, 1951 steps will be taken looking to the suspension or revocation of your license.

                                 Edward T. McCaffrey
                                 Commissioner

While " Sun Magazine " is not specifically referred to in the notice, all parties to the action have agreed that it is to be deemed included.

Plaintiffs assert that as a result of this notice, newsdealers refused, and continue to refuse to handle, carry or accept any further deliveries of copies of either magazine. The present action was commenced by service of a complaint, verified January 18, 1952, which in addition to the other relief not now pertinent, sought a judgment declaring that the actions of the license commissioner violated plaintiffs' constitutional right of freedom of speech and of press in contravention of section 8 of article I of the New York State Constitution and the First and Fourteenth Amendments of the United States Constitution, and that the actions of the license commissioner constituted a prior restraint upon publication which set up a censorship of the press. Additionally, plaintiffs asked for a temporary and permanent injunction restraining the license commissioner and his agents from threatening newsdealers under his jurisdiction with suspension or revocation of their licenses, or any other disciplinary action, if they sell or offer for sale any copies of " Sunshine & Health " or " Sun Magazine ".

Plaintiffs' motion for an injunction *pendente lite* was denied by the late Justice CORCORAN on April 28, 1952 (*Sunshine Book Co.* v. *McCaffrey,* 8 Misc 2d 327). Thereafter, plaintiffs moved for a jury trial on the question whether certain issues of the two publications were obscene under the provisions of section 1141 of the Penal Law (Civ. Prac. Act, § 430). An amended order dated April 23, 1953, granted that motion and directed

that four different issues of the magazines be submitted to a jury for findings as to whether or not they were obscene. The particular periodicals involved were the November, 1951 and December, 1951 issues of " Sunshine & Health " and the November-December, 1951 and January-February, 1952 issues of " Sun Magazine ".

After a trial before a jury had ended in a disagreement, the case was retried in December, 1953; and, on the second trial, the jury found each of the issues of the magazines to be obscene.

Thereupon, a motion for judgment dismissing the complaint was granted; and a resettled judgment, from which the instant appeal is taken, was entered on February 2, 1955.

In view of our conclusion that the action of the commissioner of licenses constituted a prohibited prior restraint, it is unnecessary for us to reach the question whether the evidence before the jury on the framed issues supported the finding of obscenity.

When the Supreme Court in *Roth* v. *United States* (*supra*, p. 485) said: " We hold that obscenity is not within the area of constitutionally protected speech or press ", that court was not overruling the doctrine of prior restraint which deals with restrictions imposed in advance of publication. It merely meant that obscenity statutes, which have been adopted in all of the 48 States, do not violate the First and Fourteenth Amendments of the Federal Constitution. The holding in *Roth* v. *United States* (*supra*, p. 492) is thus expressed by Justice BRENNAN: " In summary, then, we hold that these statutes, applied according to the proper standards for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited."

The doctrine of immunity from prior restraint was unequivocally announced in *Near* v. *Minnesota* (283 U. S. 697, 715) where Mr. Justice HUGHES said: " liberty of the press, historically considered meant, principally although not exclusively, immunity from previous restraints or censorship." That tenet continues to be the touchstone of the courts in reviewing limitations, either by administrative officials or statutes, which attempt to restrict expressions in advance of utterance or publication. In *Kingsley Books* v. *Brown* (354 U. S. 436) the court in upholding the constitutionality of section 22-a of the New York Code of Criminal Procedure, specifically emphasized (p. 445): " Unlike *Near,* § 22-a is concerned solely with obscenity and, as authoritatively construed, it studiously withholds restraint upon matters not already published and not yet found to be offensive." Hence, no matter what the medium of expres-

sion may be section 8 of article I of the New York State Constitution and the First and Fourteenth Amendments to the United States Constitution make the rights of free speech and freedom of the press wholly immune from prior restraint or abridgment.

In *Matter of Excelsior Pictures Corp.* v. *Regents* (3 N Y 2d 237, 247) Judge FULD said: " While I am in wholehearted agreement with his thought that 'obscenity, real, serious, not imagined or puritanically exaggerated, is today as in all the past centuries, a public evil' (Desmond, Legal Problems in Censoring, 40 Marq. L. Rev. 38, 54; opinion p. 246), it does not follow that the proper remedy is suppression at the 'administrative level.' The evil, it seems to me, may be adequately dealt with by resort to the courts in the first instance, either by criminal prosecution (Penal Law, § 1141) or by injunctive process. (Cf. Code Crim. Pro., § 22-a; *Brown* v. *Kingsley Books*, 1 N Y 2d 177, affd. 354 U. S. 436.) "

Apart from these constitutional and adequate means to control the dissemination of obscene material and to punish offenders, there is no other statutory authority which would clothe an administrative official of the City of New York with the power to determine whether existing publications are obscene. But, certainly, any censorship in advance of publication constitutes an unconstitutional and illegal prior restraint. This rule is the foundation stone of the guarantees of freedom of speech and freedom of the press. Even as we would not hesitate to strike down a palpable attempt to violate those guarantees, so, by the same token, are we constantly vigilant against any indirect encroachments, however subtle, which result in censorship. Courts have condemned informal methods of censorship which were attempted by threats of criminal prosecution. (*Bantam Books* v. *Melko*, 25 N. J. Super. 292, mod. 14 N. J. 524; *New Amer. Lib.* v. *Allen*, 114 F. Supp. 823; *Dearborn Pub. Co.* v. *Fitzgerald*, 271 F. 479, 482.) Constitutional limitations will not prevent individuals or groups, not officially connected with the government, from using their influence to arouse public opinion on the evils of obscenity. Religious groups have an unqualified right to instruct their parishioners to shun such publications. The courts will however interfere when there is any governmental attempt to invade the constitutional guarantee.

Respondent argues that the remedies afforded by section 1141 of the Penal Law and section 22-a of the Code of Criminal Procedure are entirely independent of the powers and duties conferred upon the commissioner of licenses with respect to his department. The regulations of the commissioner of licenses (6, 7, 8) prohibit " the sale or distribution of indecent litera-

ture ", and make the violation of those regulations a cause for suspension or revocation of a license. Since a hearing would be required for the suspension or revocation of a license (*Matter of Hecht* v. *Monaghan,* 307 N. Y. 461) and a right to review is given by article 78 of the Civil Practice Act it is argued that the letter of November 19, 1951, could not be considered any prior restraint against the newsdealers or a denial of due process to them.

The actual facts however preclude any such sophistical interpretation of the notice. The real impact of the letter was to compel obedience by the newsdealers; and to some extent must have been effective in curtailing, and preventing the sale of *future* copies of plaintiffs' magazines. We cannot construe the powers of the commissioner of licenses, with respect to the matters under the jurisdiction of his department, as including the institution of an informal system of censorship under the guise of enforcing his rules and regulations.

We apply the test here of the practical operation and effect of the letter of November 19, 1951, and find that it constituted a serious prior restraint against future publications of plaintiffs and violated their constitutional rights. The conclusions we have reached will not prevent the commissioner of licenses or any other city official, through proper channels, from obtaining convictions or injunctions to stamp out the sale and dissemination of obscene matter. This is their duty and they should be encouraged and supported in their efforts to eradicate " a public evil ". There appears to be an almost universal condemnation of obscenity as such, although there exists a wide divergence of opinion as to what constitutes obscene matter. When prosecutors zealously enforce the criminal statutes, the fear of indictment and punishment will act as a deterrent to the spread of obscene matter. However, we must in unmistakable terms inveigh against the use of *administrative* power to limit communications by advance censorship. (See Emerson, Doctrine of Prior Restraint, 20 Law & Contemp. Problems [1955], 648.)

As Judge FRANK said in *United States* v. *Roth* (237 F. 2d 796, 823): " Government control of ideas or personal preferences is alien to a democracy. And the yearning to use governmental censorship of any kind is infectious. It may spread insidiously. Commencing with suppression of books as obscene, it is not unlikely to develop into official lust for the power of thought-control in the areas of religion, politics, and elsewhere ".

The existing statutes afford means to law enforcement officials for dealing with obscene literature and publications. New

methods which meet constitutional standards may be devised in the future by the Legislature. We cannot predict what forms these may take. The human mind is fertile and necessity promotes ingenuity. But whatever means may be taken to stamp out the pernicious evil of obscenity, they must conform with, and respect, the constitutional guarantees of free speech and freedom of the press. We cannot countenance encroachments upon those rights by censorship by an administrative official. To permit that would be to inject the unwholesome effects which the uncompromising rule against prior restraint was calculated to prevent.

Therefore for the reasons indicated plaintiffs were entitled to a judgment declaring that the action of the commissioner of licenses in sending the letter of November 19, 1951 violated their constitutional rights; that such action constituted a prior restraint upon publication and amounted to censorship. Additionally, relief should have been afforded in the nature of a direction to the commissioner of licenses to recall that letter and to instruct the newsdealers to whom it was sent to disregard it.

The judgment should be modified accordingly. This disposition makes it unnecessary to pass on other matters mentioned in the notice of appeal.

PECK, P. J., BREITEL, FRANK and BASTOW, JJ., concur.

Judgment unanimously modified and, as so modified, affirmed. Settle order.