David F. Lee, Jr., J.
In this action for a declaratory judgment and a permanent injunction the plaintiff moves for a preliminary injunction, and defendant, by way of cross motion, moves for judgment pursuant to CPLR 3211 (subd. [a]) on the ground that the court does hot have jurisdiction of the subject matter of the complaint, ‘ ‘ or should decline to take jurisdiction, by reason of the fact that jurisdiction thereof is vested in the Public Service Commission ” and upon the ground that the complaint fails to state a cause of action.
The action arises out of the competitive situation between suppliers of gas heating and of electric heating. The parties serve customers in a number of municipalities and areas in common. Defendant has filed with the Public Service Commission a rate schedule, P.S.C. No. 113, Service Classification No. 2, which, under the heading “ Special Provisions,” provides, in part: “ (a) Space Heating Service: Any customer using general service under this service classification and also using electricity as the sole source of space heating in a premises or segregated portion of a premises, may upon written application to the Corporation have the energy used for such space heating, as well as air conditioning and water heating for such electrically heated space, separately metered. The rate for such separately metered service will be 1.33# gross, 1.3# net per kilowatt hour ”.
The same rate schedule provides for both a “ demand charge ” and an “ energy charge ” for “ general service.” The “ general service ” rate is substantially higher than the “ 1.33# gross, 1.3# net ” rate provided in “ Special Provisions.”
Plaintiff’s complaint alleges, upon information and belief, that: “ [I]n addition to furnishing energy for space heating, air conditioning and water heating under said special provision for space heating service, defendant has been and is furnishing and offering to customers using electricity for space heating to furnish energy for lighting under that provision rather than at the filed rate for general service.”
In support of plaintiff’s motion for a preliminary injunction there is submitted an affidavit of an attorney employed by plaintiff that states, with reference to a discussion on October 13,1967 with an officer of defendant corporation: “ 3. At that time (he) told me that New York State Electric & Gas Corporation was offering electricity for lighting under the special provision for space heating in its tariff identified as P.S.C. No. 113, Service Classification No. 2, in cases where electricity was used as the *369 sole source of space heating and where the lighting load amounted to 25% of the heat loss of a building.”
The affidavit of an officer of the defendant corporation submitted in support of defendant’s motion, and in opposition to plaintiff’s motion, states, in part:
‘1 6. Prior to October 16,1963, the service classification applicable to general service did not contain a Special Provision applicable to space heating service but in 1963 it was recognized that heating by electric energy would be a desirable load to promote, with the result that the Special Provision relating to space heating service was incorporated in the general service Service Classification No. 2. This resulted in electric energy becoming more competitive with other forms of fuel for the heating of buildings.
“7. In recent years, many new buildings have been designed with high intensity lighting, which, in turn, has been included in the building design as a heat source. It is a recognized engineering and architectural principle that recommended levels of illumination make a substantial contribution to the heating of buildings. Modern buildings are designed to take advantage of this engineering principle. For instance, defendant’s office building near Ithaca, completed in 1964, is so designed that heat supplementary to that created by the lighting need not be furnished until the outside temperature falls to a predetermined level of approximately 35 degrees.
“ 8. In recognition of this fact, defendant regards lighting as properly included with other heat sources and measurable by the space heating meter as provided in Special Provision (a) of Service Classification No. 2 where such lighting contributes a substantial portion of the heating requirements of a building at times of maximum heating requirements. This interpretation has been furnished to members of the staff of the Public Service Commission of the State of New York, which is charged with supervision over defendant’s rates and classifications of service. No objections have been raised by the Commission’s staff to such interpretation.”
The plaintiff’s complaint further alleges that “ the furnishing of electricity for lighting under said special provision for space heating by defendant ” violates subdivisions 2 and 5 of section 65 of the Public Service Law, and subdivision 12 of section 66 of the Public Service Law in that “ electric service for lighting is rendered to customers who also use electricity for space heating for less compensation than charged for providing electricity for lighting to other customers; * * * the rate or charge has not been filed with and approved by the Public Service Commission ” *370 and “ less compensation is charged for furnishing electricity for lighting to customers also using electricity for space heating than the rates and charges applicable to furnishing electricity for lighting as specified in defendant’s schedule filed and in effect and also because rules or regulations, and privileges or facilities not regularly and uniformly extended to other customers for lighting service are extended to such customers.”
The basic question for determination is that of jurisdiction — whether the court has jurisdiction over the subject matter of the action. The gravamen of the wrong pleaded lies in the allegation that the defendant’s practice violates subdivision 5 of section 65 of the Public Service Law because the rate has not been filed with and approved by the Public Service Commission. Underlying the basic question is the question whether defendant’s practice of charging a special rate for lighting in an all-electric building comes within the provisions of special provision (a). If it does not, defendant’s practice is in violation of subdivision 5 of section 65. If defendant’s practice is authorized by Special Provision (a), plaintiff’s remedy as to its allegations of violations of subdivision 2 of section 65 and subdivision 12 of section 65 of the Public Service Law and unfair competition is with the Public Service Commission rather than in the courts, for these alleged violations essentially would bring into the issue the unreasonableness and discriminatory character of schedules filed with the Public Service Commission. (See Kovarsky v. Brooklyn Union Gas Co., 279 N. Y. 304 and cases cited; Matter of Leitner v. New York Tel. Co., 277 N. Y. 180; Goodman & Co. v. New York Tel. Co., 309 N. Y. 258; Ten Ten Lincoln Place v. Consolidated Edison Co., 190 Misc. 174, affd. 273 App. Div. 903, mot. for lv. to app. den. 273 App. Div. 973, mot. for lv. to app. den. 298 N. Y. 937; Cardone v. Consolidated Edison Co., 197 Misc. 188, affd. 276 App. Div. 1068, mot. for lv. to app. den. 277 App. Div. 769.)
Plaintiff’s complaint alleges:
“ 13. Said practice of the defendant of charging illegally low rates for electricity used for lighting by customers who use electricity for space heating constitutes unfair competition with plaintiff by furnishing electricity for lighting to defendant’s space heating customers at a lower rate than offered to plaintiff’s space heating customers.
“ 14. Defendant attempts to induce prospective customers who are planning the construction of buildings to have them designed to provide for space heating by electricity by representing to them that if they do use electricity for space heating, electricity *371 for lighting will also be available to them at the special space heating rate.”
The allegations set forth in these paragraphs, 13 and 14, and the allegations that the defendant’s practice is in violation of subdivision 2 of section 65 and subdivision 12 of section 66 of the Public Service Law do not allege that defendant is applying its rate schedule in a discriminatory manner, but that discrimination and unfair competition result from defendant’s interpretation of Special Provision (a). If the Public Service Commission schedule does authorize the special rate for lighting here complained of, plaintiff’s remedy in the first instance is to attack that schedule as discriminatory and unreasonable before the Public Service Commission. If the practice is not authorized by the rate schedule then plaintiff may here assert violation of subdivision 5 of section 65 of the Public Service Law as alleged in paragraph 12 (B) of its complaint.
The court concludes that it is without jurisdiction over the subject matter of plaintiff’s allegations set forth in paragraphs 12 (A), 12 (C), 13 and 14 of plaintiff’s complaint.
The complaint alleges in paragraph 12 (B) the defendant’s alleged violation of its filed and approved rate schedules; and as to this assertion the court does have jurisdiction of the subject matter. As to this allegation the plaintiff is under no mandate to pursue its administrative remedies, if any, for this involves a question of the interpretation, application, and enforcement of the rate schedules. The Public Service Commissi on is granted broad powers by section 66 of the Public Service Law over the rate-making policies of gas and electric utilities. In City of Rochester v. Rochester Gas & Elec. Corp. (233 N. Y. 39, 49) Judge Cardozo wrote: ' ‘ The business of rate making has been confided by the legislature to a body of experts with powers of inquiry and modification adequate to the task.” However, once the rates have been established, it is for the courts to interpret the schedules, to determine whether the schedules are applied as the Public Service Commission established them, and to enforce those schedules. It is noted that section 74 of the Public Service Law provides, in part, that: ‘ ‘ Whenever the commission shall be of opinion that a gas corporation, electrical corporation or municipality is failing or omitting or about to fail or omit to do anything required of it by law or by order of the commission or is doing anything or about to do anything or permitting anything or about to permit anything to be done, contrary to or in violation of law or of any order of the commission, it shall direct counsel to the commission to commence an action or special *372 proceeding in the supreme court in the name of the commission for the purpose of having such violations or threatened violations stopped and prevented.”
The Public Service Commission is not, however, given the exclusive right to bring an action seeking to enjoin a utility from continuing what may be an unlawful practice as to the tariff filed. (See Kovarsky v. Brooklyn Union Gas Co., 279 N. Y. 304, supra; Murray v. New York Tel. Co., 170 App. Div. 17, affd. 226 N. Y. 590 and Hewitt v. New York, New Haven & Hartford R. R. Co., 284 N. Y. 117.)
As in Kovarsky, here plaintiff’s allegation of defendant’s violation of its rate schedules involves a question of law, a question of the interpretation and application of those schedules. The plaintiff’s allegations in paragraph 12 (B) of its complaint attack not the schedule itself, but defendant’s application of that schedule. Here, of course, we have the question of interpretation of a Public Service Commission rate schedule and not the interpretation of a statute as in Kovarsky, but, as pointed out by Judge Cabdozo in Matter of International Ry. Co. v. Public Serv. Comm. (226 N. Y. 474, 479): “ The public service commission is the delegate of the legislature; and regulation by the one is regulation by the other (Village of Saratoga Springs v. Saratoga Gas, Electric L. & P. Co., 191 N. Y. 123).”
Plaintiff’s counsel urges in his memorandum that: “The defendant is attempting to make a change in its rate schedule under the guise of ‘ interpretation ’. If this can be done, the whole statutory scheme of rate-making can be avoided. Instead of filing a proposed change and waiting for the course of orderly administrative procedures for it to become effective, a utility could put its ‘ interpretation ’ into effect immediately and hope to avoid the administrative process. Or if a competitor should object after the ‘ interpretation ’ is discovered the question could be raised as to the competitor’s standing before the Commission, and the argument could be advanced that customers who had constructed buildings in reliance upon the availability of the ‘ interpretation ’ would suffer undue hardship if required to pay a higher rate ”.
Section 71 of the Public Service Law lists the parties with standing to file complaints with the Public Service Commission with regard to rates and classification of service of gas and electrical corporations. Though this section includes “ a gas corporation or electrical corporation supplying or transmitting said gas or electricity ” it does not include a gas corporation as a party that may file a complaint against a competitor.
*373 Defendant moves, pursuant to CPLR 3211 (subd. [a], par. 7) for the dismissal of plaintiff’s complaint. The affidavits submitted on these motions show that the defendant has approximately 55 customers receiving service at the special lower rate, and that it “ regards lighting as properly included with other heat sources and measurable by the space heating meter as provided in Special Provision (a) of Service Classification No. 2 where such lighting contributes a substantial portion of the heating requirements of a building at times of maximum heating requirements. ’ ’
The court concludes that plaintiff’s complaint does allege a cause of action under subdivision 5 of section 65 of the Public Service Law. Defendant’s contention that plaintiff has no standing to bring the action is without merit.
The plaintiff seeks a preliminary injunction. It is elementary, however, that an injunction in advance of trial should not issue unless a clear right is shown both factually and legally. The affidavits raise sharp issues. The burden of establishing the undisputed right to the drastic remedy of a preliminary injunction is upon the plaintiff. (Eldre Components v. Kliman, 47 Misc 2d 463, 464; 7 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 6301.13.) The determination on a motion for a preliminary injunction, of course, does not determine the ultimate issues in the action. Here, as the court in Eldre Components (supra, p. 464) said: “ Whether or not plaintiff will be entitled to an injunction after a trial cannot now be determined. Suffice it to say, however, that upon the facts before the court, the drastic remedy of a preliminary or temporary injunction should not be granted.”
The court concludes that defendant’s motion to dismiss the plaintiff’s complaint should be denied; plaintiff’s motion for a preliminary injunction should be denied. No motion costs are awarded.