Andrew R. Tyler, J.
Plaintiff, Rosemont Enterprises, Inc. ("Rosemont”), has brought on the instant motion seeking an order which would modify the injunction contained in the order of this court entered on May 30, 1972 so as to restrain the defendant Clifford Irving ("Irving”) and all persons in active concert or participation with him, from further publishing the manuscript of a purported autobiography of Howard Hughes pending the final determination of the case at bar.
A brief review of the facts in this matter is essential in arriving at a disposition of this motion. On May 30, 1972, Mr. Justice Culkin of this court entered an order granting Rosemont a preliminary injunction against the publication of a manuscript by Clifford Irving of a purported autobiography of Howard Hughes. This order was entered after the defendant Irving had publicly admitted that the manuscript in question was not an authentic autobiography by Howard Hughes.
On April 18, 1975, counsel for Irving confirmed to counsel for Rosemont that preparations had begun to publish the manuscript in question as a fictionalized autobiography of Howard Hughes. On May 23, 1975, plaintiff obtained an order from Mr. Justice Postel of this court compelling Irving to appear for a deposition with respect to the proposed publication. On June 5, 1975, Irving appeared for the deposition but refused to answer any questions with regard to the proposed publication.
On June 9, 1975, plaintiff appeared before Mr. Justice Asch of this court, who in turn referred the matter to Mr. Justice Culkin, who directed Irving to appear for an examination on June 19, 1975, with the further direction that Irving answer plaintiff’s questions with respect to the proposed publication of *585 the manuscript in question. Additionally, on June 9, 1975, counsel for Irving informed counsel for the plaintiff that a Spanish language version of the manuscript had been published in Spain on that day. On June 16, 1975, Irving served a notice of appeal from Justice Culkin's direction, and the instant matter has now been brought before this court by order to show cause.
The critical decretal paragraph contained in Justice Culkin's May 30, 1972 order, which plaintiff now seeks to modify in order to enjoin the publication of the manuscript in question reads in pertinent part as follows: "pending the determination of this action * * * the defendants * * * and all persons acting in concert or participation with them, be and they hereby are enjoined and restrained from publishing * * * in whole or part, the manuscript of a purported autobiography of Howard R. Hughes prepared * * * in whole or part, by Clifford Irving * * * and from representing, either publicly or privately, that any of the defendants is entitled to publish any of the aforesaid matter as an authorized biography or autobiography * * * of Howard R. Hughes.”
It is an accepted rule of law that before a preliminary injunction will be granted pursuant to the provisions of article 63 of the Civil Practice Law and Rules, the moving party must establish a "clear right” to the relief requested. (Park Terrace Caterers v McDonough, 9 AD2d 113.) A "clear right” means that a cause of action must be established (City of Utica v Mercon, Inc., 71 Misc 2d 680), and that cause of action must be ripe for determination before a court with jurisdiction over the matter. (Columbia Gas of N. Y. v New York State Elec. & Gas Corp., 56 Misc 2d 367.) When hearing a motion for a preliminary injunction, it is not the function of the court to adjudicate the merits of the underlying action, and it is not necessary that the plaintiff seeking a preliminary injunction show with an absolute certainty that it will prevail in the main action in order to warrant a grant of the motion. (Swope v Melian, 35 AD2d 981; Joio v Rubenheimer, 37 Misc 2d 318.)
However, certain well-established conditions must be shown to exist before this court will grant the drastic provisional remedy of preliminary injunctive relief. In order for the instant motion to be granted plaintiff must demonstrate the likelihood of its ultimate success on the merits of the underlying action, that irreparable harm will occur absent the granting of the preliminary injunction, and that a balancing of the *586 equities in the case at bar mandates a grant of the injunctive relief sought herein. (Albini v Solork Assoc., 37 AD2d 835.)
The threshold issue which must be reached in determining the disposition of the instant motion deals with the question of whether there are circumstances in which it might be proper to grant the plaintiff the relief which it seeks, thereby establishing, at least for the purposes of this motion, that plaintiff has demonstrated a clear right to the relief sought. Essentially, plaintiff seeks a modification of the May 30, 1972 order of Justice Culkin so as to enjoin the proposed publication by the defendants of a fictionalized version of an autobiography of Howard R. Hughes. The effect of the relief sought by plaintiff would be to impose a prior restraint upon the proposed publication.
It is a well-settled principle of law that prior restraint is illegal censorship. (New York Times Co. v United States, 403 US 713.) And it has been held that prior restraint may not issue even as against a publication alleged to be false or scandalous. (Organization for Better Austin v Keefe, 402 US 415; Curtis Pub. Co. v Butts, 388 US 130; Near v Minnesota, 283 US 697.) And, as was stated by the Appellate Division, First Department, in the case of Sunshine Book Co. v McCaffrey (4 AD2d 643, 647): "any censorship in advance of publication constitutes an unconstitutional and illegal prior restraint. This rule is the foundation stone of the guarantees of freedom of speech and freedom of the press. Even as we would not hesitate to strike down a palpable attempt to violate those guarantees, so, by the same token, are we constantly vigilant against any indirect encroachments, however subtle, which result in censorship.”
It is the view of this court that the relief which the plaintiff seeks constitutes an indirect encroachment upon the rights and guarantees embodied in the First Amendment to the Constitution. The courts of this State will not be a party to the vitiation of the constitutionally guaranteed freedoms of speech and the press.
There has been absolutely no showing by plaintiff that the proposed fictionalized autobiography of Howard R. Hughes will in any way contravene the May 30, 1972 order of Mr. Justice Culkin, nor has plaintiff shown that the intent of the May 30 order was to enjoin publications such as the one now proposed by the defendants.
Howard R. Hughes is internationally famous as the reclu *587 sive billionaire who has been associated with movie stars, presidents and other billionaires around the world. His business enterprises have been acknowledged to have been involved with the United States Central Intelligence Agency, and the Howard Hughes name has been linked to the Watergate tragedy on more than a few occasions. By adopting a solitary existence that some would term eccentric, Mr. Hughes has served to draw even more attention to himself. If there has ever been a public figure, Howard Hughes is a public figure, and as such, it is to be expected that the public will want to know about him, and it is to be expected that creative individuals may wish to create fictional and factual works concerning his life and lifestyle.
The fact that three years ago the defendant Irving attempted to perpetrate a fraud upon certain publishers and the public by claiming that he was in possession of the authentic autobiography of Howard Hughes cannot possibly prevent him from presenting a fictionalized work concerning Howard Hughes, even if it is a fictionalized autobiography. Plaintiff Rosemont claims that it was granted certain rights by Howard Hughes, including the sole right to publish his authorized biography or autobiography in any and every media. Rosemont now contends that the rights granted to it by Hughes extend to almost any work which concerns Howard Hughes, factual or fictional. Howard Hughes is no different from any other person in that he cannot have a monopoly, nor can he give a monopoly to any entity, with respect to works concerning his life. "A public figure can have no exclusive rights to his own life story, and others need no consent or permission of the subject to write a biography of a celebrity.” (Rosemont Enterprises v Random House, 58 Misc 2d 1, 6-7, affd 32 AD2d 892.) In keeping with the above, it should go without saying that a person need not get the consent of a celebrity to write a fictional piece about that person, even if . the fictional work is in the form of an autobiography, so long as it is made clear that the creative work is fictional. This court finds the assertion by the plaintiff that it can employ the May 30, 1972 order of Mr. Justice Culkin to ban the publication of a fictional work concerning Howard Hughes is totally untenable.
Because plaintiff has failed to indicate that it has a "clear right” to the relief which it seeks in the instant proceeding, this court will deny in its entirety the instant motion for injunctive relief, and need not consider the additional factors *588 of irreparable harm, and balancing of equities. However, it is important to note that in instances where it will do greater harm to a defendant to grant an injunction than it will to a plaintiff to deny it, then an injunction will not issue. (Canadair, Ltd. v Seaboard World Airlines, 43 Misc 2d 320.) In the case at bar, the harm that will be suffered by the defendants if the requested injunction should issue is the impairment of their First Amendment rights. It is the view of this court that the protection of the constitutional rights of litigants should be of paramount importance in any lawsuit, and the case at bar is no exception. The harm which the plaintiff asserts that it will suffer is confined to contractual rights and economic interests. As stated, defendants’ constitutional rights are at stake on the other side. A balancing of the equities mandates that the instant motion be denied.
Accordingly, the instant motion is denied in all respects, and the stay set forth in the order to show cause dated June 17, 1975 is vacated forthwith.